Hewett vs. New Orleans and Carrollton Railroad Company,

## No. 4687.

RICHARD HEWETT VS. THE NEW ORLEANS AND CARROLLTON RAILROAD COMPANY.

In claims for damages in consequence of a malicious prosecution it is a fundamental principle of law in reference to such actions, that the prosecution complained of should be shown destitute of a probable cause. What will or will not amount to a probable cause will depend upon the circumstances of each particular case.

In the case at bar the defendants were not the aggressors. They discharged the plaintiff, a car-driver in their service, for a violation of his contract, and said that he had appropriated fares to himself. Under the circumstances of the case, as shown by the evidence in the record, the plaintiff put himself in the position of having the charge made against him, and he can not hold the defendants liable for a malicious intent toward him, when the defense which they set up to his action against them was founded on his own act. Therefore the claim of plaintiff for damages on the ground of his having been maliciously and unjustly slandered can not be maintained.

APPEAL from the Superior District Court, parish of Orleans. *Hawkins, J.* Jury trial. *R. King Cutler* and *W. H. Cooley*, for plaintiff and appellee. *L. E. Simonds,* for defendants and appellants.

MORGAN, J. Plaintiff was a car-driver in the service of defendants and was discharged by the defendants from their employ. He sued for wages due at the time of his discharge before a justice of the peace.

The answer was that he had "violated his duty and acted unfaithfully in collecting and receiving fares from passengers contrary to orders, and in appropriating fares for himself instead of putting them in the box."

He had judgment in his favor. The company appealed to the Third District Court. In that tribunal he had judgment again. He now brings this suit against the company, claiming five thousand dollars damages for having willfully and maliciously accused him of the crime of purloining money belonging to the company, and in spreading the same upon the records of the courts of the country.

The defense is a denial that there was any malice or bad intent entertained toward him on the part of the defendant in any of the matters referred to in his petition.

The case was tried by a jury, who found a verdict in favor of plaintiff for two thousand dollars. . Defendants appeal.

The contract between the plaintiff and defendants was that he should forfeit all wages that might be due him, and render himself liable to be discharged, if he was discovered taking or receiving in his hands any money or tickets tendered or paid for fare by passengers, or should he fail in any instance to cause the same to be put in the box.

Either of two circumstances, therefore, was sufficient to authorize his discharge:

First—Taking or receiving in his hands any money or tickets tendered or paid for fare.

Second—Failing, in any instance, to cause the same to be put in the box.

The witness, Kirby, who informed upon the plaintiff, says that he got on the car which was in charge of the plaintiff at Carrollton; that he gave the plaintiff a nickel, and that he (plaintiff) did not put it in the box; that he rode on the car to Napoleon Avenue; that witness was on the platform of the car all the time he was riding, talking to the plaintiff, and that if he, plaintiff, had put the nickel in the box, he, witness, thinks he would have seen him do it.

Fitzcompton, a witness for the defendants, says that he was in the car when Kirby entered it; that Kirby gave the driver a dime, who returned him two nickels, one of which he dropped into the driver's hand; that after riding a little distance, about two squares, the driver handed him, the witness, the nickel and told him to drop it in the box, saying that he did not receive fares; that Kirby was inside the car all the way.

Hewett, the plaintiff, swears that he never received a nickel belonging to the defendants, appropriating it to his own use. He says that he might have received a nickel from Kirby, but not with the intention of keeping it. He says: "I might have given him change. He gave me a dime, and I gave him back the change. He handed me back a nickel, which made me suppose that I gave him too much change. I gave it to Mr. Fitzcompton, who, I believe, put it in the box."

The testimony of the plaintiff and his witness, without any regard to what is sworn to by Kirby, satisfies us that the defendants had, under their agreement, the right to discharge him from their employ, and that he had forfeited the wages which were due to him. Plaintiff's explanation of the facts is shallow and altogether unsatisfactory. If he really believed that he had given Kirby too much change, why did he give the fare to Fitzcompton to be put in the box? This explanation seems to have been an after thought. He could not have discovered his error, if he really believed that the nickel which Kirby gave him was in return of an excess of change, unless he had counted all the money he had about his person. It can not be supposed that he took this precaution.

Neither does the testimony of Fitzcompton help him, for he swears that Kirby gave the plaintiff a dime, and received back two nickels, one of which he dropped into the plaintiff's hands, and that they had ridden two blocks before he gave it to the witness, asking him to put it in the box.

The testimony of the plaintiff and his witness satisfies us that the plaintiff did take from Kirby his fare, which, under his contract, he was-

prohibited from doing, and which forfeited his wages and authorized his discharge.

Did this authorize the defendants in setting up as a defense to the suit instituted by the plaintiff against them, that he had appropriated fares to himself instead of putting them in the box?

We think the law of the case is correctly laid down in Talbert vs. Stone, 10 An. 537. There, plaintiff had employed the defendant as overseer of his plantation. He discharged him and brought suit against him for the price of a mule, the hire of three slaves, the keep of a horse, and for six hundred dollars, which, plaintiff alleged, the defendant had stolen from him. Defendant reconvened, claimed his wages as overseer, and asked for five thousand dollars damages, on the ground that plaintiff, " in violation of good faith, discharged this respondent without compensating him for his labor, and from unjust and malicious motives charges this respondent with theft, in order to injure the character of this respondent and excite prejudices in the mind of the community against him." One jury found a verdict in favor of plaintiff for $503 50. This court reversed the judgment and remanded the cause for a new trial. On the new trial, judgment was rendered in favor of defendant on his reconventional demand, allowing him as wages two hundred and twenty-five dollars, and thirty-five hundred dollars damages.

On appeal this court said: " The first and most important matter to be examined, is the claim for damages for a malicious prosecution. It is a fundamental principle of law in reference to such actions, that the prosecution complained of should be shown to have been destitute of probable cause. Greenleaf on Evidence, section 449. What will or will not amount to probable cause, says that author, section 455, will depend upon the circumstances of each particular case. And again: Probable cause does not depend on the actual state of the case in point of fact, but upon the honest and reasonable belief of the party prosecuting." And the verdict of the jury, as regards the damages, was entirely set aside. The court further said that " because there is not sufficient legal proof to convict the defendant of the crime charged, it by no means follows, necessarily, that plaintiff is to be mulcted in damages for having made the charge."

Now in the case at bar the defendants were not the aggressors. They discharged the plaintiff for a violation of his contract. When sued for wages they set up his violation of his contract, and said that he had appropriated fares to himself. The evidence of the plaintiff and his witness, showing, as we think it does, that he received the fare, and that fact being made known to the defendants, it seems to us that they had cause to set up in defense to the action brought against them that he had appropriated their money to himself. If he took it without authority

and in violation of his contract, the presumption is a natural one that he took it for his own use. He put himself in the position of having the charge made against him, and he can not hold the defendants liable for malicious intent toward him, when the defense which they set up to his action against them was founded on his own act.

. It is therefore ordered, adjudged, and decreed that the judgment of the district court be avoided, annulled, and reversed, and that there be judgment in favor of defendants with costs in both courts.