The opinion of the court was delivered by
Watkins, J.
This is an action in damages for defamation and slander of the plaintiff’s daughter, and the plaintiff is appellant from *1009 an adverse judgment, predicated upon the verdict oí a jury rejecting his demand.
The charge of the petition is that defendant did wilfully, maliciously and libelously slander and defame the character of his fourteen-year-old daughter by asserting in a public place, and in the presence and hearing of a number of persons, that she had been seduced by one John Bowling, who had kept her as his mistress, and was thus keeping her at the time.
That said false and slanderous statements had exposed his daughter to hatred, contempt and ridicule, and caused her to be shunned by her acquaintances, and that her only means of redress is in a court of justice.
As an aggravation, of the slander and defamation charged, the plaintiff further avers that said false and slanderous assertions of the defendant has not only injured her, “but has injured him personally and every member of^his family;” and “that same has exposed him and every member of his family to hatred, contempt, ridicule and obloquy, and has caused them to be shunned, and has injured them in the community in which they live.”
Upon the foregoing averments plaintiff declares that his daughter personally, he himself and his family have been damaged in the sum of $10,000, and he prays judgment for that sum in his own favor— other members of his family not being joined in. the suit as parties plaintiff or defendant.
First pleading an exception of no cause of action, defendant subsequently excepted that the petition was vague and too indefinite to admit of explicit answer; and that it was further defective, in that it alleges that $10,000 damages was done to himself, his daughter and the members of his family generally, without apportioning the share or portion of each, in consequence of which he demands that the suit be dismissed.
These exceptions having been overruled, the defendant filed an answer, the purport of which is that at the time of said alleged slanderous utterances being made plaintiff’s daughter Susie had just eloped with John Bowling, without the authority or consent of her parents, and was at the time absent; and that the relatives and friends of the plaintiff were then engaged in making search for the couple. That, being at the residence of a neighbor, several other neighbors being present, the question was being discussed between *1010 them and the defendant as to what was the best thing to be done with the runaway couple in case they were apprehended; and the latter admits that he did say that “they should marry, because, from all the information he could get they had been as good as married for nearly two years.”
But defendant avers that this remark was made without malice on his part, it being only a suggestion as to the best thing that could be done under the circumstances. That it was but the repetition of a common rumor in the neighborhood at the time, and that said report was true, but he affirms that he never repeated or circulated this rumor, and denies that it had any injurious effect on the plaintiff or any member of his family — his daughter having married another man during the pendency of this suit, with her father’s permission and at his residence.
In the course of his argument defendant’s counsel invited attention to his exceptions, and insisted that they were good and should have been sustained by the district judge.
It seems clear that his exception of no cause of action was not well taken, if it was not formally abandoned, but we think it was abandoned, at least, in effect. And his dilatory exception is untenable— the averment complained of having been manifestly intended to show an aggravation of the defamation and slander as a means of enlarging the quantum of damages.
On the merits the proof is brief but pertinent, and, in the main, harmonious.
In respect to the truth of the report affecting the chastity of the plaintiff’s daughter there is some doubt, she denying and he affirming its correctness, but as to the existence of such a rumor in the vicinity in which plaintiff lived there is, in our minds, no doubt. And it is equally clear that defendant had heard the rumor for some time previous to the time of the occurrence of the alleged slander, though disbelieving it until the elopement took place and brought the circumstances to his mind again.
The testimony of the defendant is in keeping with the averments of his answer and the testimony of several of plaintiff’s witnesses.
All the evidence shows him to be a man of character and first respectability in the neighborhood in which he lives. The fact of plaintiff’s daughter having eloped with the young man in question, under very peculiar and significant circumstances, superinducing *1011 pursuit by father and friends, was the immediate cause of his neighbors collecting together for purpose of consultation.
The very object in view was assistance and comfort to the plaintiff in his hour of tribulation and distress — not annoyance and vexation. At this consultation the defendant took the position that in case the erring coiiple were apprehended and brought back to the paternal roof they should marry, announcing his opinion on the faith of what he had heard currently reported in the neighborhood. There is no question of the fact that his advice was correct, for the proof shows that the girl was married soon after this suit was filed, albeit to a different man.
One of the plaintiff’s principal witnesses, in speaking of what transpired at the consultation, says:
“I remarked, after Mr. William Oorley had made some remarks, that I would kill the girl before she should marry Bowling, and then Mr. Ed. Oorley made the remarks which I have related,” thus characterizing the circumstances that lead up to the defendant’s statement,. and evidencing the absence of malice or ill will toward the plaintiff.
The circumstances of the elopement of the plaintiff’s daughter with Bowling are thus detailed by themselves as witnesses.
Bowling’s statement is as follows, to-wit:
“I lived last year, 1891 — the first part of the year, up to about July — at Mr. Lester’s. I worked in the field. Members of his family worked in the field with me. I know Susie Lester. She worked in the field with me a little. Susie and I left there some time in June. We started about 8 o’clpck at night. We left on foot. We came down the big road toward Floyd. Went down to about one mile this side of Goshen. We traveled all night. We were brought back by Lee Virgil and James Lester.”
The statement of Susie Lester, daughter of the plaintiff, and now the wife of Lewis, is as follows, to-wit:
“ It is a fact that I left my father’s house and went with John Bowling. It was about 8 o’clock at night when we left. We went on foot. We went down nearly to the parish line on the road to Delhi. We did not walk all night. * * We rested from 12 o’clock until daylight. We stopped at Mrs. Sweet’s. We left there just at sunrise.”
The foregoing are very suggestive circumstances,, indeed. Re *1012 capitulation or comment would not strengthen them, or render them any more cogent or convincing.. ,
We do not feel willing to announce it as our opinion that the charges preferred against the plaintiff’s daughter were proved beyond the peradventure of a doubt, but it is our deliberate conviction that the defendant had sufficient ground to .make the statement he did under the circumstances detailed. That he did not maliciously and causelessly utter and publish a libelous slander to the world, with the purpose or expectation of inflicting injury upon the plaintiff or any member of his family. Having heard of rumors to the prejudice of the young girl, her sudden flight with young Bowling on foot at night, and alone, was quite sufficient to confirm his previous suspicions; and when the plaintiff’s friends and neighbors were summoned together — he among them — for the purpose of consultation, what more reasonable or natural than that he should-give the facts within his knowledge and information, and State his conclusions; particularly, as- the girl’s own course of conduct had not only invited, but rendered same necessary.
We are clearly satisfied that the finding of the jury was correct, and is in consonance with equity and justice.
The case of Seanland vs. Savoie, 43 An., is not a parallel case.
Judgment affirmed.