ROGERS, J.
 

 Mrs. Gladys Iola Starns sued her husband, Isaac G. Starns, for separation from bed and board, alleging that defendant was guilty of habitual intemperance, cruelty, and excesses, and that he had publicly defamed plaintiff by causing to be published in the daily newspapers of the city of New Orleans and elsewhere statements made by him accusing plaintiff of improper conduct and infidelity. Plaintiff also alleged the existence of community property, prayed for an injunction against its disposal, asked for alimony and also for attorney fees.
 

 The defense to the suit is a denial of the habitual intemperance, cruelty and excesses charged and that defendant’s statements concerning plaintiff constituted in law a defamation of her character; that the, statements defendant had made relative to the character of plaintiff were true; that defendant had made them without malice and for the purpose of correcting a newspaper error; and that a great portion of the newspaper accounts of the episodes mentioned therein emanated from plaintiff herself. Defendant also reconvened for a divorce, charging his wife with having committed adultery with one Dr. Sedgie L. Newsom. The reeonventional demand, however, was stricken out on plaintiff’s motion alleging that a defendant in a suit for a separation cannot reconvene for a divorce on the ground of adultery.
 

 The court below rendered judgment in plaintiff’s favor granting her a separation from bed and board; fixed her alimony at $100 a month; awarded her certain property as her separate property; designated certain property as community property; recognized defendant as a creditor of the community for certain amounts; and allowed $750 as attorney fees. From this judgment defendant appealed.
 

 No written reasons were given by the trial judge for his decision in this case. However, the trial judge, on defendant’s objection that the allegations were too vague and indefinite to admit of proof thereunder, ruled out any evidence of cruelty and excesses, but admitted evidence relative to defendant’s alleged habitual intemperance. We assume, there
 
 *613
 
 fore, that his judgment was based on his conclusion that plaintiff had sustained either, or both, of her allegations of habitual intemperance and public defamation.
 

 While there was considerable testimony-adduced, both by plaintiff and defendant, on the issue of defendant’s habitual intemperance, our conclusion is, from a careful analysis of this testimony, that plaintiff has failed to sustain her charge by a preponderance of the evidence. It is plain, from the record, that defendant is not a teetotaler; but neither is he an habitual drunkard. Defendant has undoubtedly indulged in the ordinary use, not the habitual abuse, of intoxicating liquor practically all his mature life. His use of intoxicating liquor has not incapacitated him from successfully operating his large' mercantile business nor from driving his automobile; nor has it, in our opinion, rendered the living together of his wife and himself insupportable. The record reveals that plaintiff sometimes kept whisky in the home for her husband, which she served to him herself. She drank beer and, occasionally, some wine with defendant. A letter, which will be referred to hereafter, written by plaintiff to defendant shortly after their separation, shows that defendant’s so-called drinking was not seriously regarded by plaintiff, and that she was ready and willing to return to him. From all of which we are forced to the conclusion that, if trouble had not arisen between plaintiff and defendant over the alleged attentions of Dr. Newsom to plaintiff, this suit never would have been brought.
 

 The act of defendant which is mainly relied upon in this court by plaintiff for the affirmance of the judgment of the court below is defendant’s, alleged public defamation of, plaintiff in the New Orleans newspapers.
 

 The publication of which plaintiff complains arose out of the tarring and feathering of Dr. Newsom by defendant and his four brothers. For this act Dr. Newsom sued and recovered a judgment for large damages against the present defendant and two of his brothers. See Newsom v. Starns (La. App.) 142 So. 704.
 

 The record discloses that the first publication relative to the tarring and feathering episode did not emanate from defendant. The story as it first appeared in the newspapers was what is termed in newspaper work as a “mystery story,” and, in the words of the representative of one of the newspapers engaged in investigating the affair, “The aim of every city editor in New Orleans was to find out who hq.d tarred and feathered Dr. Newsom. None of us knew. There was no indication in the story.”
 

 Subsequently, defendant gave out the interview of which plaintiff complains. ■ Defendant testified that he did this in order to correct the newspaper stories which had left uncertain which of the wives of the Starns’ brothers was involved in the matter.
 

 It appears that plaintiff, herself, also had talked to a newspaper reporter, but claimed that she had not been correctly quoted in the published story.
 

 Dr. Newsom was tarred and feathered .by defendant and his brothers on May- 26, 1930. The facts leading up to that act and the newspaper publications resulting therefrom are substantially as follows, viz.; .....
 

 
 *615
 
 . On May 22, 1930, defendant, on the. insistence of his wife, who diligently assisted him in preparing for the trip, attended the convention of a fraternal order, of which he was member, held at Jackson, Miss. On the same riight there was a “Strawberry festival” dance given in Hammond under the auspices of the local American Legion. Plaintiff attended this dance with Miss Gladys Starns, her sister-in-law. One of defendant’s brothers, Newton Starns, and his wife also attended the dance. During the progress of the dance, Newton Starns left the hall for the purpose of attending to some business at Independence, La. While Newton Starns was absent and Miss Gladys Starns was on the dance floor, Dr. Newsom was seen to approach plaintiff, whisper something to plaintiff, and a short while thereafter plaintiff and Dr. Newsom left the dance hall together. This was between 11 and 11:30 o’clock. When Newton Starns returned to the dance hall from Independence shortly before 12 o’clock, he noticed that the defendant’s automobile, in which plaintiff had <?ome to the hall, was not in the place where it had been parked. On arriving at the hall, he inquired for plaintiff, and was told she was no,t there. Newton Starns, his wife, and Miss Gladys Starns then rode around the business section of Hammond in Newton Starns’ car looking for plaintiff, but without success. During the search they passed and repassed the dance hall several times. Shortly after 1 o’clock they gave up the search and went home; Miss Gladys Starns going to thei home of her mother. About 2 o’clock plaintiff.drove up in defendant’s car to the home of her mother-in-law. Miss Gladys Starns refused to accompany plaintiff to her home in Livingston.
 

 Plaintiff admits that she was absent from the dance hall for two hours. She testified that she left the hall because she had a headache, and that she rode out to the home of a friend of hers in Bast Hammond, but the friend was not at home, and she rode around alone until she arrived at the home of her mother-in-law at 2 o’clock in the morning.
 

 Defendant returned from Jackson, Miss., on. May 23, 1930, when he was informed of his wife’s peculiar conduct at the dance on the night before. He appears to have been greatly upset by the affair and to have made additional inquiries as to her conduct the night before and on other occasions. As a result he asked his wife on May 24, 1930, to leave his home, which she did.
 

 On May 25, 1930, plaintiff wrote defendant a letter, in which she expressed great love for defendant, said she had forgiven him for the way in which he had treated her, and looked forward to the time he might come and get her and bring her back home. She said, “I wouldn’t want to give you up, even in death; I want to keep you always.” She also said, “Sweetheart, I am wondering if you will forgive me and give me another chance and let me prove to you that things can be different.”
 

 The next day, May 26, 1930, the tarring and feathering of Dr. Newsom occurred, resulting in the newspaper stories about that affair and the marital troubles of the parties litigant. This suit was filed on May 30,1930.
 

 Defendant testified that plaintiff confessed to him and to certain members of their respective families of her misconduct with Dr. Newsom on the night of the dance at the American Legion Hall and on other occasions. Plaintiff, however, denied the misconduct
 
 *617
 
 charged against her or that she had ever made any confession of such misconduct. Dr. Newsom did not testify in the case. There is a conflict in the testimony of the other witnesses who were interrogated in regard to plaintiff’s alleged confession or admission of guilty conduct. There was some evidence of plaintiff and Dr. Newsom having been seen on one occasion walking the streets of New Orleans together. And a negro witness, Murray Brumfield, testified that he was familiar with defendant’s automobile and that he also knew Dr. Newsom; that on one occasion, while he and another negro were out on Pleasant Ridge fbr a load of wood, he saw defendant’s ear parked in a pine thicket, and that Dr. Newsom and some woman were in the car in a compromising position.
 

 Defendant, on being asked about his statement to the representative of the newspaper, stated that he told what he knew and believed,' that his wife had committed adultery with Dr. Newsom. Defendant was then asked on what he based his knowledge. 1-Iis answer being, “On her confession to me, and her absence from the dance hall in Hammond from about eleven o’clock until one o’clock at night; on information given me by Murray Brumfield; on information given to me by my brother, who" had hunted faithfully that night in Hammond for two hours; and on those grounds and reasons.”
 

 We do not think it necessary to pass on the question of plaintiff’s guilt or innocence of the charge of adultery brought against her by defendant. That is a question which can be properly determined in the suit for divorce which, we understand from the briefs in this case, defendant has brought against his wife on that ground. For the purpose of this case all that is necessary for us to find, as we do find, is that defendant did not causelessly and maliciously cause the publication of slanderous statements concerning his wife for the purpose and the intent of inflicting injury upon her.
 

 Plaintiff’s conduct, to say the least, was highly indiscreet. Her letter to defendant shows that she had wronged him in some way. Defendant certainly believed that his wife was guilty of misconduct, otherwise he would not have ordered her to leave the matrimonial domicile and resorted to violence against the alleged co-respondent. Plaintiff put herself in the position of having the charge made against her. When defendant was interrogated by the representative of the newspaper, it was only reasonable and natural that he should give the facts within his information and knowledge and state his conclusions.
 

 Where the declarations of defendant concerning plaintiff appear to have been uttered without malice, and under circumstances from which no malice is in law implied, they are not actionable. Gilbert v. Palmer, 8 La. Ann. 130; Hewett v. N. O. & O. R. R. Co., 28 La. Ann. 685; Lester v. Corley, 45 La. Ann. 1006, 13 So. 467; Pellifigue v. Judice, 154 La. 782, 98 So. 244. We see no reason why the rule should not apply with equal force to a case of this kind.
 

 In Lalande v. Jore, 5 La. Ann. 32, this court has expressly held that, where the conduct of plaintiff has been marked by continued exasperation and violence towards defendant without any just cause or provocation, plaintiff cannot obtain a decree of sep
 
 *619
 
 aration from bed and board for language grossly defamatory of her.
 

 In Ashton v. Grucker,
 
 48
 
 La. Ann.
 
 1194, 20
 
 So. 738, the court denied a separation to plaintiff on the ground that his wife had publicly defamed him, because whatever statements were made by defendant in respect to the relations she asserted existed between her husband and her supposed rival were not either wantonly or maliciously made, nor made with the intention of injuring her husband. The statements in question were made to a brother-in-law of plaintiff and to two friends of the par-ties. It is true that in the course of the opinion the court said it was not inclined to designate as a “public defamation” the utterances of a wife to a confidential friend while seeking sympathy or advice and when smarting under what she reasonably considered to be wrongs received at the hands of her husband. And the court attempts to differentiate the case in that respect from the ease of Cass v. Cass, 34 La. Ann. 614, holding that the charge of adultery against a wife by a husband uttered in the presence of third persons did constitute a public defamation as contemplated by our law, for which the injured wife was entitled to the protection of the courts. But, be that as it may, the court did hold that, on the failure of a husband to desist in any way from his attentions to another woman, which made his wife jealous, he could not demand a separation on account of the repeated reproaches of his wife and quarrels arising therefrom, which rendered his home unhappy.
 

 ' As' a consequence of plaintiff’s principal demand for a separation from bed and board, certain incidental demands were set up by the parties and disposed of by the judgment herein appealed from. Among these demands was one by plaintiff for attorneys’ fees, which the judgment fixed at $750, and ordered taxed and paid as costs of this proceeding.
 

 All the incidental demands must necessarily fall with the dismissal of plaintiff’s principal demand. So far as the attorneys’ fee is concerned, although plaintiff has been unsuccessful in her suit, and therefore is not entitled to recover the fee in her own name, since she cannot sue the husband during the community to recover a debt, her attorneys may recover a fee against her husband on a quantum meruit, Spiller v. Spiller, 170 La. 813, 129 So. 212, which we shall reserve their right to do.
 

 For the reasons assigned, the judgment appealed from is annulled and plaintiff’s suit is dismissed, reserving the rights of her attorneys Rownd & Warner to claim a reasonable fee from the defendant, Isaac G. Starns, for services rendered his wife in this proceeding.
 

 O’NIELL, C. J., concurs except as to the reservation of a right to the plaintiff to claim an attorney’s fee.