149 So. 455

## HUGHES v. HUGHES.

### No. 32232.

May 29, 1933.

Rehearing Denied July 7, 1933.

Laycock & Moyse and Charles A. Holcombe, all of Baton Rouge, for appellant.

Taylor, Porter & Brooks and C. C. Bird, all of Baton Rouge, for appellee.

ROGERS, Justice.

Mrs. Minnie G. Hughes, alleging cruel treatment, sued her husband, Napoleon G. Hughes, for a separation from bed and board. The court below dismissed her suit, and she has appealed from the judgment.

Plaintiff alleges that her husband is of a miserly disposition, and, though a wealthy man, has denied her most of the necessities of life, has refused to provide her with proper domestic help, and has required her to do all the ordinary household work; that she was compelled to milk cows, bring in firewood, scrub floors, and perform other hard

manual labor, which caused her health to break down, necessitating a surgical operation; that while sick and helpless her husband refused to administer her food and medicine and also refused to hire a servant to do these things for her; that her husband objected to her leaving home, even for a short time, for the purpose of amusement or for any other purpose, and that, on a number of occasions when she returned home about dark, after attempting to obtain some enjoyment in life through the association of friends with whom she went on automobile rides, attended church, and visited moving picture shows, she found that her husband had locked her out, and he unwillingly permitted her to enter her own home; that her husband seldom spoke to her, and, when she complained of his conduct, declared, if she was not satisfied therewith, she could leave whenever she desired; that her husband has cruelly treated their son, whom he ran away from home, and on one occasion threatened to kill him, because he had contracted some bills which her husband did not desire to pay; that this treatment, continuing over a long period of years, made her a nervous wreck; and that living with her husband under the conditions became unbearable.

We have carefully considered the testimony in the case, and have failed to find that it supports the allegations of plaintiff's petition.

The record discloses that at the time this suit was filed defendant was about 75 years old and plaintiff was about 42 years old. The parties had been married and living together for about twenty-five years. Their marriage took place in the state of Tennessee, when the defendant was a bachelor 50 years old and plaintiff was a girl between 17 and 18 years of age. Defendant was engaged in farming operations, and plaintiff was the daughter of a tenant or share farmer on defendant's place.

The parties lived together in Tennessee for about six years after their marriage, and then removed to Louisiana with their child. Defendant bought a place lying a few miles outside the limits of the city of Baton Rouge, in the parish of East Baton Rouge, where he built a home and engaged in farming operations. This is the place on which the parties lived at the time this suit was brought.

Defendant is thrifty but not miserly. Plaintiff herself is of a frugal disposition. Defendant apparently possessed some means at the time he left Tennessee, and by the continued industry and thrift of both defendant and his wife while living in this state those means have been materially increased.

The home of the parties was equipped with more conveniences than are usually found in a farmhouse. Among these conveniences were electric lights and electric iron, refrigerator, radio, piano, vaccum cleaner, running water, bathroom, and a well-furnished kitchen. Plaintiff had the use of an automobile, and she made a number of trips to her former home in Tennessee and to other places. She was given joint control with her husband of his bank account, and she freely exercised her right.

We gather from the testimony that defendant generally kept only one cow, although at times he had as many as three cows on hand. Plaintiff, who was raised on a farm, looked

after and milked the cows because she liked that kind of work and because she did not think negro helpers were clean enough to handle the animals.

Plaintiff was required to do very little scrubbing of floors, since nearly all the floors in the dwelling house were covered. Plaintiff occasionally may have brought in some firewood, but that was because she chose to do so. Defendant also frequently brought in the wood, and so did the servants who were employed from time to time to assist plaintiff in her household work.

The record further satisfies us that plaintiff's standard of living with her husband was far beyond what she had enjoyed in her early youth. Defendant was not unkind to his wife. He provided her with more than the usual comforts enjoyed by farmers' wives. Defendant only locked the doors during his wife's absences from home because he was old, deaf, and alone in his country home. He always admitted his wife as soon as she made her presence known by the usual alarm. Plaintiff sometimes carried a key which enabled her to enter the house without arousing her husband.

The record discloses only one occasion on which plaintiff was unable to gain admission to the home. This was on a certain New Year's Eve when plaintiff and her son visited the home of some friends for the purpose of speeding the parting year and welcoming the coming year. The young people present decided they preferred to attend a dance in town, which they did. The New Year's Eve celebration was called off and plaintiff unexpectedly returned to her home about 9:45 o'clock. The house was locked, as was usually the case when she was absent, and, although all the lights were burning, she was unable to attract the attention of her husband, and she spent the night with her friends at their home.

We think the record shows that defendant employed a servant whenever plaintiff wanted one or would have one; plaintiff apparently preferring to do her own work rather than to worry with servants. The record also shows to our satisfaction that the defendant furnished plaintiff with medical treatment and nursing attention whenever her illness was such as to require them. And it is affirmatively shown that work had nothing to do with the operation that was performed upon her.

We do not find any convincing testimony in the record that defendant quarreled with plaintiff or that he refused to speak to her or that he exhibited a sullen demeanor towards her. He permitted her to entertain her friends, whom he appears to have treated with unfailing courtesy.

Plaintiffs have a son who is 22 years of age. We find no proof in the record that defendant threatened this boy's life or that he treated him cruelly. On the contrary, we think defendant was probably a too indulgent father. Defendant earnestly tried to provide an education for his son, of which, however, the boy evidently did not avail himself. The boy also showed a marked disinclination to work. He soon gave up a job defendant had secured for him, and he also declined defendant's offer to set him up in the farming business. Although defendant refused to pay $1,500 for bills contracted by his son while a minor, he did furnish the boy during his

minority with five automobiles, and did support him at considerable expense.

In the early morning of February 10, 1931, which was about seventeen days before this suit was filed, plaintiff drove into Baton Rouge and withdrew from defendant's account, under the authority given her, about $800, or about one-half of the amount on deposit. She then returned home, got defendant, and drove back with him to the city. During the trip the relations of the parties were pleasant and amicable. When they reached Baton Rouge, defendant got out of the car and made an appointment with plaintiff as to where they should meet. When defendant returned to appointed meeting place, he found the car, but did not find plaintiff. Lying on the front seat of the car, however, was a note from plaintiff, advising defendant not to wait for her, that she could not stay and be a servant any longer, and that, as she knew she could get half, defendant need not try to see her.

Thereafter defendant made some effort to have plaintiff return to the matrimonial domicile, but without avail, and in due course this suit was filed asking for a separation from bed and board, for an injunction against the disposal of defendant's property, and demanding alimony.

The case impresses us as one primarily in which a wife much younger than her husband, and still in her prime, has suffered a change in tastes and habits, and desires livelier company and lighter amusements, although innocent enough, than those to which she has been accustomed, in the pursuit of which she regards her plain and elderly husband as somewhat of a handicap; and, secondarily, in which plaintiff has become dissatisfied because defendant was insistent that their son (apparently his mother's idol) should do some real work and not wholly depend on his parents for his support.

We find no sufficient reasons for reversing the judgment on the law or the facts of the case.

Plaintiff prayed for $1,000 as attorney fees, and plaintiff's counsel urged on the argument of the case that, in the event the judgment be affirmed, the attorney fees be allowed. We are unable to do this, because plaintiff, being unsuccessful in her suit, cannot recover such fees in her own name, although her attorneys themselves may recover a reasonable fee on a quantum meruit against her husband. Starns v. Starns, 176 La. 610, 146 So. 165.

For the reasons assigned, the judgment appealed from is affirmed, reserving to plaintiff's attorneys the right to claim a reasonable fee from defendant for services rendered his wife in these proceedings.