THOMPSON, J.
The plaintiff is a subject of France, but has resided in Louisiana' since 1910. He is a man of limited means, and was a tenant on the cotton plantation of defendant’s mother. The defendant is a merchant and planter, and looked after the planting operations of his mother on the plantation on which plaintiff was a tenant. The relations of the parties,, so far as the record shows, were entirely agreeable and friendly. The defendant was chairman of the committee having in charge the sale of Liberty bonds in 1918 in the parish of Lafayette.
In the month of October of that year the plaintiff went to the store of the defendant to sell him some cotton, a part of which cotton was due defendant’s mother. In the course of the conversation the defendant asked the plaintiff to buy a $50 Liberty bond, to which request the plaintiff demurred, stating that he was not able to buy any more bonds, having already subscribed for $50 and an equal amount in War Savings stamps. The defendant, with a laudable zeal, became quite insistent, suggesting to the plaintiff that it was his patriotic duty, and pointing out the means by which the plaintiff could buy the bond and get a long time in which to pay for, it, involving no great sacrifice. The plaintiff became somewhat irritated and angered; a heated discussion ensued; this brought on an interchange of unpleasant remarks, and finally resulted in a personal collision between them. The plaintiff was arrested under a charge of disloyalty, and placed in jail, where he remained until some time in the forenoon of the next day, when he was released on bond. The charge was not pressed against the plaintiff when the grand jury was convened, and that body formally returned “Not a true bill.”
The plaintiff brings this suit for. compensatory damages in the sum of $15,000 for slander and for false arrest and imprisonment. The petition alleges that the defendant, in the presence of others, charged the plaintiff (speaking in French) with being a traitor to the government of the United States, and with- being a fugitive from France to evade his military duty to that country, the said petitioner being a native of France. It is further alleged that the defendant caused the plaintiff to be arrested and imprisoned under a false, malicious, and-unfounded charge of disloyalty to the government of the United States.
The answer denies that the defendant made use of the language set out in the petition, but alleges that, having failed to get the plaintiff to subscribe for a bond after offering the most favorable terms that could be made, and due to the plaintiff’s positive refusal and resentful attitude, the defendant did say to the plaintiff in French:
“You are escaping your military service due your country, as all men there of your age are under arms.”
It is further alleged that when the above remark was made to the plaintiff he violently assaulted and beat defendant, and otherwise illtreated him; that defendant ordered the plaintiff -to leave his place of business, and, upon plaintiff’s refusing to do so, the defendant phoned to the sheriff’s office for protection against the violent conduct of the plaintiff; that later in the day the defendant met the sheriff of the parish, and related all the facts of the difficulty, and stated that he desired, to make an affidavit *785 against the plaintiff to protect himself; that the sheriff stated that it was not necessary to make an affidavit then and there; that he would arrest the plaintiff, and the affidavit could he made later; that on the following day defendant. went to La Payette to make the affidavit against the plaintiff, hut that several friends of the plaintiff intervened, in his behalf, and prevailed upon the defendant not to do so. It is denied that defendant made the affidavit charging the plaintiff with disloyalty to the government.
There is a slight variance between the language as alleged in the petition to have been used by the defendant and the language as imputed to the defendant by the plaintiff in his testimony on the trial; and there is a marked conflict between the testimony of the plaintiff and that of the defendant and one Hernandez as to what was said and done by the participants in' the controversy.
The plaintiff,- after stating what had been said between them in connection with his subscribing for a Liberty bond, says that defendant told him that if he did not take a Liberty bond he would make him pass as a suspect to the enemy; that he then told defendant that he had his military papers, and defied him to say that he (plaintiff) was a suspect; that defendant then told'him he was a traitor, and plaintiff answered that he was a liar; that Mr. Judice then caught plaintiff by the collar, and as he shoved him he told plaintiff that he was a fugitive from his country. The plaintiff saya he, then grabbed defendant and shoved him against his safe; that they were then separated; that when he got a chance he saw Mr. Judice in front of his typewriter, and he was laughing at him; that he got loose from the man holding him, and struck Judice in the face with his fist; that they were then separated, and he left the store.
There is no material difference between the plaintiff and defendant as to what was said by them with reference to the sale of the bond up to the time the conversation became ill-tempered and exciting. Beginning at that point, the defendant gives the following account:
“The more I talked the more surly he became, more sore he looked, and more firmer he seemed to feel against taking a bond. I finally put the question to him as to why he could not take a bond. His reply was that they were made for the rich. I told him the government did not recognize any class, rich or poor, and that if men like him-bogan to draw those distinctions during the war that we would get in the fix that Russia was. He replied that I could not tell him anything about Russia; that he read books.”
After reciting how he pointed out the duty of the plaintiff to buy a bond and the manner by which he could easily pay for it, and realizing that the plaintiff’s decision was firmly fixed not to buy, the defendant says that he told the plaintiff to leave the store; that in his opinion the plaintiff was hidden under our flag; that he was concealed under our flag to keep from the military duty that he owed to his government, as all men of his age in France at that time were under arms. He said the plaintiff then called him a liar, grabbed him by the throat, and drew blood. That they were separated by Hernandez after exchanging several blows.
Paul O. Hernandez, the only other person who saw all of the difficulty and heard all that was said by the parties, testified as follows:
“Then Mr. Judice, realizing that Mr. Pellifigue did not want to say ‘Yes’ about anything that he tried (meaning the duty to buy and the manner in which he could buy a bond), he then told Mr. Pellifigue to go sell his cotton wherever he wanted; that he did not want •to buy it. Mi\ Judice, seeing that he did not leave, told him a second time to go; that he did not want to have anything to do with him; that he was a runaway of France. He said it in French, and made Mr. Pellifigue angry, and he got close to Mr. Judice and struck him, and the fight started. I tried to separate them, and I had not much power — could not prevent *787 them fro-m hitting one another — and I could see a little blood run on Mr. Judice’s face, and by-being between them I received a blow on the right side of my face by Mr. Pellifigue, so I struck him one blow in the face. The noise was so great the clerks inside of the store heard it, and came over to see what was the matter.”
The plaintiff then left.
The plaintiff had a wife and four children, and, as already stated, he was a poor man. He doubtless felt that he had subscribed for as many bonds as he was able to pay for and do justice to his dependent wife and children. We are not inclined to the opinion, from the record, that the plaintiff’s conduct in declining to subscribe for an additional bond was prompted by any unpatriotic motives, or that it evidenced 'any desire to oppose the sale of the bonds. Nor are we impressed that plaintiff was escaping his military duty to the country to which he owed allegiance, or hiding under the American flag.
[1] It is perfectly obvious, however, from the testimony of. plaintiff andi defendant and that of Hernandez, who was a disinterested witness, taken all together, that the plaintiff cannot recover for the alleged slander. For, conceding that the defendant did tell the plaintiff that he was a traitor to the United States, and a fugitive from his military duty to France, all that plaintiff claims was said as defamatory, and conceding that such language constituted actionable slander, which is extremely doubtful when considered in the light of all the surrounding circumstances and the conditions then existing, with the entire world at war an'd the public mind inflamed and abnormal, the plaintiff by his own .conduct and his ill-tempered and frenzied speech has forfeited any right of action he might otherwise have had, and has effectually cut himself off from asserting any claim for damages on account of such slander.
The testimony conclusively establishes that, whatever was said to plaintiff by the defendant for his failure to buy a Liberty bond, the plaintiff called tlm defendant a liar, and followed that up with a violent, illegal, and unjustifiable blow with his fist. Having taken the law into his own hands, and by such illegal methods having attempted to avenge any real or fancied injury caused him by, the defendant, he placed himself without and beyond the pale of the law.
It is a well-settled rule of law and jurisprudence that, where persons mutually engage in applying opprobrious and defamatory epithets to each other, neither of them can recover damages. Johnston v. Barrett, 36 La. Ann. 320; Bloom v. Crescioni, 109 La. 668, 33 South. 724, 94 Am. St. Rep. 456; David v. Aaronson, 105 La. 347, 29 South. 895.
And the rule applies with equal force to those who engage in, a mutual quarrel or mutual combat. The courts in such cases will not inquire into the comparative culpability of the participants so engaged.
And mere words, written or spoken, however much they may be calculated to excite, irritate, or humiliate, or however gross or abusive they may be, never constitute an assault, and do not, therefore, justify an assault and battery. Marr’s Crim. Jurisprudence, § 76, p. 126.
One who is himself in fault cannot recover damages from another who has retaliated in kind, although the latter was ndt justifiable in law. Bigney v. Van Benthuysen, 36 La. Ann. 38; Mihojevich v. Bodechtel, 48 La. Ann. 619, 19 South. 672.
[2] Nor can .the plaintiff’s demand for false • arrest and imprisonment be given more favorable consideration. It is an undisputed fact that the defendant did not make the affidavit charging the plaintiff with disloyalty to the government, nor did the defendant suggest, advise, or request that the plaintiff should be arrested on such a charge. The defendant related the facts of his trouble with plaintiff to the district *789 judge, and that official himself determined the charge to be made, and prepared the affidavit which he caused to be made by the sheriff. The defendant also related the facts to the sheriff, and stated to him that he wanted the plaintiff arrested; but neither the judge nor the sheriff, nor any one else, testified that the defendant wanted the plaintiff arrested and charged with the crime of disloyalty to the government.
The defendant testified that he did not know of the particular charge made by the sheriff in the affidavit against the plaintiff until seven months thereafter; and he did not know that the matter had been taken up by the grand jury. The facts related by the defendant to the judge and to the sheriff involved the crime of assault and battery on' the defendant, and, in the absence of any special suggestion from him, it is-just as reasonable to assume that he intended to have the plaintiff arrested for that crime as for any other that might grow out of or be included in the same facts.
Had the charge been made for assault and battery, it could not be said, in the light of the evidence, that there would have been lacking the element of probable cause. And for that matter, it is not clear that there is an entire absence of probable cause with respect- to' the charge that was laid against the defendant. As a matter of fact, the petition does not allege that there was no probable cause for making the charge against the plaintiff.
In Grant v. Deuel, 3 Rob. 17, 38 Am. Dec. 228, it was said that to maintain an action for a malicious prosecution the plaintiff must prove: Hirst, the prosecution; second, that the defendant was the prosecutor, or the cause of the prosecution; third, that he was actuated by malice; fourth, that there was no probable cause for the prosecution.
We have seen in this case that the defendant was not the prosecutor, nor the procuring cause of the prosecution off the plaintiff for disloyalty. There is no evidence of malice on the part of the defendant; the petition does not allege want of probable cause for plaintiff’s arrest, and the evidence does not show that the arrest of plaintiff was entirely groundless.
[3] Even where express malice has been proved, in a case like this, there must be some positive evidence to show that the prosecution. was groundless. An acquittal, or even subsequent proof of complete innocence, is not sufficient evidence of want of probable cause. Sundmaker v. Gaudet, 113 La. 887, 37 South. 865.
But be that as it may, the full facts were laid before the judge and the sheriff; the judge determined the crime with which to charge the plaintiff, without any suggestion from the defendant. The judge prepared the affidavit and caused -it to fie sworn' to by the sheriff. In that situation it is clear that the defendant cannot be held liable in damages as for a malicious prosecution; and particularly is this true where there is an entire absence of malice on the part of the defendant, who in good faith desired the plaintiff’s arrest for his own protection.
The rule noted in Am. & Eng. Enc. of Law (2d Ed.) vol. 19, p. 693, is that, where a person in good faith, states facts to a magistrate which do not constitute a crime, and the magistrate acts on a misconstruction of such facts, or where the magistrate misconceives the offense actually committed, and ■ erroneously issues a warrant for the arrest of a party, the person making the affidavit would not be held liable in an action for malicious prosecution for the mistake of the magistrate. Nor will the defendant be liable where the charge made is of a particular offense, but the magistrate without authority changes it to another.
And in 18 Ruling Case Law, p. 17:
“Where a party states the fiare facts as to the conduct of a third person to a judicial offi *792 cer, and the latter erroneously deems a crime to have been committed, and directs the third person’s arrest, the informer is not liable to the person arrested as for malicious prosecution.”
The jury found against the plaintiff, and the trial judge approved the verdict. We find no error, manifest or otherwise, and the verdict and judgment are accordingly affirmed, at the costs of plaintiff and appellant.