MOISE, Justice.
 

 Plaintiff filed this suit against Walter Marrón, Carl Gipson and Alvin F. Moore for damages in the sum of $5,065, for an alleged malicious arrest and false imprisonment. The suit was voluntarily dismissed by plaintiff against Carl Gipson. The remaining two defendants filed an exception of no cause of right of action, and this exception was referred to the merits. The suit is more than nine years old.
 

 The facts of record elicited from the trial on the merits are distinctly and clearly set out by fire learned district judge, as follows:
 

 “Brushy Lake, which, is a continuation of Lake Brucn, at the time of the arrest was closed by the Police Jury of Tensas Parish and by the Conservation Commission of Louisiana. * * during the night of July 29, about ten or eleven o’clock p. m., the defendants, Marrón and Mr. Gipson, who accompanied Marrón, discovered a truck parked on the bank of Brushy Lake, nearly on the waters edge off the highway; that there was no one in the truck, but investigation disclosed that about 150 pounds of ice, two suits of clothes, two pairs of shoes, one hat and a part of fish scales were in same. Marrón and Gipson remained at this location approximately twenty or thirty minutes, when Marrón observed a moving object in bushes, Marrón threw his flashlight in that direction, and called ‘Come out, I have you covered’, whereupon the plaintiff Barfield appeared with his hands up. Barfield first refused to give his name, but afterwards did admit who he was. He refused to say who was with him, but admitted that he was there to buy fish, and also admitted that he had a boat in the lake. Marrón placed the defendant, under arrest and took him to his home, 'where he called Mr. Moore, advising of the circumstances of the case, and asked Mr. Moore for advice. It is indicated that Mr. Moore did not know exactly what to do about the matter,
 
 *213
 
 ■and suggested that he take him to St. Joseph and turn him over to the officials. It was testified that earlier in the day, a Mr. Calvert, one of the defendant’s witnesses, grew suspicious of the activities of Mr. Barfield, and followed Barfield’s truck to the home of David Lide, on Lake Bruen, re-, porting to Mr. Lide that he believed that Brushy Lake was being seined at night. Mr. Lide thereupon called on Mr. Moore, defendant herein, the President of the Police Jury, and acquainted him with the circumstances. Mr. Moore then conveyed to Mr. Marrón, the Conservation Agent, his suspicions, whereupon Mr. Marrón went in search of the parties. Marrón made his investigation, discovered the truck and its contents, and later arrested Mr. Barfield, took him to the jail in St. Joseph, La., where he remained the balance of the night.' He was .released without any charges being placed against him, some time during the morning of the following day.
 

 “The question this Court must determine is whether or not the actions of Marrón • and Moore would constitute a false, malicious and illegal arrest, a false imprisonment and a conspiracy, and whether or not these two men had any right under their authority as officials, to conduct themselves as they did in this particular instance.
 

 “We will first consider the status of Mr. Moore. It appears from Mr. Moore’s testimony that Mr. Hubert Calvert advised Moore that certain parties were going down to Brushy Lake, and that witness, Moore and Mr. Lide, who formerly had a contract for the Seining of this particular body of water, had 'decided that it was necessary to make an investigation. 'Contact was made with Mr. Marrón and he was requested to investigate. It appears that Mr. Marrón, after apprehending or arresting Mr. Barfield, telephoned Mr. Moore, and stated that T have got the man’. That Mr. Moore then had some conversation with Mr.' -Barfield, who asked him to instruct Marrón to turn him loose, and that Moore advised that he had no authority to do so, inasmuch as the lake in question was under the supervision of the Conservation authorities, and Marrón was a representative of said Conservation Commission. He did state under the circumstances, and as a matter of his own opinion, he suggested or advised Mr. Marrón to lock Mr. Barfield up, inasmuch as the circumstances surrounding the arrest looked suspicious to witness Moore. He stated specifically that what he told Marrón, was only his opinion, and was in no way
 
 *215
 
 intended to be an instruction in his official capacity as President of the Tensas Parish Police Jury. He also, stated that Mr. Barfield did not mention anything about making a bond, or having Marrón retain Barfield’s truck’ as security for bond. Later in the testimony, Moore denied categorically that he ordered Mr. Marrón to lock Barfield up. It was also shown in the testimony that up to that time, Moore and Barfield had apparently been on very friendly terms. It was disclosed that the Tensas Parish Police Jury, in conjunction with the Conservation Commission, had at one time entered into a contract with Mr. Lide for the taking of rough fish from Lake Bruen, but at the time of this episode, the contract had been can-celled; that Mr. Marrón was an employee of the Conservation Commission, specially charged with looking after that lake and its adjacent waters, including Brushy Lake.
 

 “From reading the testimony in the case, this Court can readily see that Mr. Moore, as President of the Police Jury, would have some interest in protecting the fish in these waters. That as a citizen, he would be interested in seeing that the game laws or conservation laws were enforced. Undoubtedly, Mr. Marrón did work rather closely with the Police Jury, as well as with his employer, the Conservation Commission. It seems a perfectly natural thing to this Court that this officer should consult with those who had an interest in the maintenance of the status quo, and that Moore’s connection was simply, more or less as a result of his official position and his knowledge of conditions surrounding the seining and fishing in Brushy Lake. As far as his being a party to the arrest and confinement of Mr. Barfield, this court has not been' able to determine that such is the case. There appears to be no element of conspiracy or a malicious intention on the part of Moore, to deprive Barfield of his liberty, cause his arrest, humiliate him, or to have him placed in prison. Under the circumstances, this court can see no connection, except as hereinabove outlined, that Mr. Moore had with this unfortunate procedure. Therefore, it is the opinion of' the court, that it is so decreed, that the defendant Moore was in no degree responsible for Bar-field’s arrest and incarceration. The case is, therefore, dismissed as far as Moore is concerned.
 

 “We must now consider the status of Mr. Marrón, the Conservation Agent, who actually did make the investigation, the arrest, and who placed Barfield in prison. It was shown that Mr. Marrón acted in his capacity as a Game Warden on Lake Bruen, and
 
 *217
 
 that he was an employee of the Conservation Commission of the State of Louisiana. He admitted that on the night of July 29, he did arrest Henry Barfield, plaintiff herein. Acting on the information, that he had received, and which has been previously mentioned in this judgment, Marrón proceeded along Lake Bruen, and down to Brushy Lake. That he and Mr. Gipson made this trip together. Mr. Marrón testified that he saw an object moving in the bushes; that he flashed his light in that direction, and ordered whoever was in said bushes to come out, that he had him covered. That Mr. Barfield did disclose his presence, and came toward Mr. Marrón.
 

 “The evidence, as adduced by Marrón on cross examination, is as follows :
 

 “Q. Did you then place him under arrest? A. Not for quite a while. We questioned him and tried to get him to tell us who he was. He would not tell us for 10 or 15 minutes. Mr. Gipson asked him if his name was Arnold. He kept right on talking. Mr. Gipson did most of the questioning, and finally I asked him who the men were with him and were they licensed fishermen. He told me he was buying fish and was not fishing. Then I asked him who were the men with him, and did they have licenses. He said he would not answer that and then I told him I would have to take him in charge.”
 

 “Marrón stated that after taking Mr. Barfield in charge, that he called up Mr. Moore, and that the gist of the conversation was that Mr. Moore told him that the only thing to do was to take Mr. Barfield to the authorities. That he proceeded from Brushy Lake with Barfield to St. Joseph, made contact with Deputy Sheriff Marable Harper, who advised him to take him to jail and turn him over to the jailer. No charge was ever filed against Mr Barfield. Marrón made another investigation in an attempt to determine who the other men were at the location at which Mr. Barfield was apprehended, which consumed most of the next day, and that when he returned to St. Joseph, Mr. Barfield had been released by the Sheriff. When questioned as to his reason for arresting Mr. Bar-field, Marrón testified that it was because he was the owner of the truck, had in his possession the ice, scales and other equipment, and refused to tell the names of the men who were with him. Marrón stated that Mr. Barfield advised him that he was there buying fish; that he admitted that the truck was his; that he did have a boat and it was landed further down the lake. It was also disclosed on the trial of this case, that plaintiff’s son was present at Brushy Lake when
 
 *219
 
 his father was arrested, hut made no appearance.
 

 “Marrón also testified that Barfield complained, upon arriving at Marron’s house, that his leg was hurting, giving as the reason that it was because he had been sitting on a pole, cramp.ed up on the lake bank, and that Marrón gave him an aspirin tablet.
 

 ■“Mr. Marrón further testified at the time of the trial, he was 57 years of age, born in Waterproof, La., and has lived there practically all of his life. That he has held a commission from the State Department of Conservation, for nearly three years.
 

 “The testimony of Mr. Gipson, who accompanied Mr. Marrón on this particular trip was substantially the same as Marron’s relative to the actual circumstances of the case. In addition to that, he stated that he never saw Mr. Barfield’s son; that he did not call his boy; that when first requested, Mr. Barfield refused to give his name, hut later did so; and that he said something to the effect that he was not talking. The Court questioned Mr. Gipson as to whether or not Mr. Marrón called Mr. Barfield a liar, and he replied, T cannot say I did; I would not dispute it, but I could not say I did.’'”
 

 The foregoing recitation of the facts gives the entire background of what transpired among the parties involved, and it now becomes our duty to apply the law.
 

 The law to be applied, it would seem, is that pertaining to false arrest and imprisonment.
 

 From our examination of the authorities an arrest can be made where there is probable cause or surrounding suspicious circumstances. O’Malley v. Whitaker, 118 La. 906, 43 So. 545; Dunson v. Baker, 144 La. 167, 80 So. 238.
 

 The distinction between actions for false imprisonment and those for a malicious prosecution are far apart. In a false imprisonment, the arrest is made either without any legal process or warrant, or under a warrant null upon its face. In a malicious prosecution, the proceedings are had in pursuance of legal process, maliciously and wrongfully obtained. DeBouchel v. Koss Const. Co.,. Inc., 177 La. 841, 149 So. 496. Lord Mansfield says, in noting the difference between' false imprisonment and malicious prosecution, that: “ ‘ * * * The wrongdoer in. making the unlawful arrest or causing it to be made, takes the law in his own hands and acts without a warrant from a court or magistrate while the man who-instigates a malicious prosecution puts the machinery of criminal law into operation, causing a warrant to issue and the arrest under the warrant.’ ”■ Johnstone v. Sutton, 1 Term Reports 544 (Eng.), 1 English Ruling Cases 765; DeBouchel v. Koss Const. Co., Inc. supra.
 

 
 *221
 
 The grounds or basis for malicious prosecution do not relate to the facts of this case and therefore the law pertaining thereto cannot be applied here.
 

 It is urged in the instant case that there was a false arrest. In Dunson v. Baker, 144 La. 167, 80 So. 238, it is declared that where a citizen is arrested on reasonable suspicion of a felony, the officer may detain the party until inquiry may be made, and damages will not be allowed where the prosecuting officer acted in good faith and with probable cause.
 

 In Pellifigue v. Judice, 154 La. 782, 98 So. 244, the court held that there must be some positive evidence to show that, the prosecution was groundless and an acquittal or even subsequent proof of complete innocence, is not sufficient evidence of want of probable cause. Sundmaker v. Gaudet, 113 La. 887, 37 So. 865.
 

 In the case before us, the circumstances were highly suspicious- — at the scene of the arrest there was a truck loaded with ice to preserve fish, scales for weighing, and two' sets of clothing. Plaintiff’s refusal to give his name when first questioned by the officer, -his hiding in an obscure place and his occupation were sufficient circumstances to indicate that the officer arresting the plaintiff was not only free of malice but acted in good faith and with probable cause. It has been well said in Lyons v. Carroll, 107 La. 471, 31 So. 760, 761, that “Those who honestly seek the enforcement of law and the administration of justice, and who are supported by circumstances sufficiently strong to warrant a cautious man in the belief that the party suspected may be guilty of the offense charged, should not be unduly apprehensive that they will be held answerable in damages.” That there was no malice on the part of the defendant is apparent from the evidence. That defendant was performing a duty is clear. He did not detain the plaintiff until after making- an investigation and telephoning the president of the Police Jury. It is manifest from the record that, he acted in good faith and with probable cause. The ideal here may be expediency, the moral law — the Eleventh commandment — Don’t get caught. The demand for damages was' properly rejected.
 

 For the reasons assigned, the judgment appealed from is affirmed at plaintiff-appellant’s cost.