149 So.2d 400

**STATE of Louisiana**

**v.**

**Norbert AIAS and Ann Aias.**

No. 46293.

Jan. 14, 1963.

Rehearing Denied Feb. 18, 1963.

George H. Fust, New Orleans, for defendants-appellants.

Jack P. F. Gremillion, Atty. Gen., M. E. Culligan, Asst. Atty. Gen., Jim Garrison, Dist. Atty., Louise Korns, Asst. Dist. Atty., for appellee.

HAMLIN, Justice.

The defendants, Norbert Aias and Ann Aias [1] were charged by bill of information with a violation of LSA–R.S. 40:962, in that they did wilfully and unlawfully possess and have under their control a narcotic drug, to wit: Opium and Morphine, contrary to the form of the Statute of the State of Louisiana. They were tried by jury and convicted, and each was sentenced to serve five years in the Louisiana State Penitentiary at hard labor.

On appeal to this court, defendants present for our consideration one bill of exceptions, which applies to a reservation made upon the overruling of a "Motion to Suppress Evidence," (hereinafter discussed), a reservation made during trial and a reservation made upon the overruling of a motion for a new trial—the subject matter of each ruling and reservation of a bill of exceptions being the same.

The facts leading to the filing of the instant information, as deduced from the testimony attached to the bill of exceptions are to the effect that on March 2, 1961,

Officers William Warner, Raymond Comstock and Larry Hand of the Narcotics. Squad of the New Orleans Police Department were notified by a New Orleans physician that a lady named Johnson residing in the 1400 block of Esplanade Avenue "continually bothered" him for paregoric prescriptions. The officers went to the Esplanade address where they were told by the landlord that defendants and a Miss. Malone, who had also lived at the Esplanade: address, had moved to Elysian Fields Avenue; he did not know the house number but told the officers where Miss Malone worked.

The officers proceeded to the La Mour Lounge, in the 800 block of N. Rampart Street, where they questioned Evelyn Malone after telling her that they were on a narcotics investigation, and she cooperated with them.

Evelyn Malone's testimony was to the effect that Ann Aias had told her that she was going to search for a larger house and that if she found one Evelyn could live with her and she would take care of Evelyn's baby while Evelyn was at work; that she and Ann found a place on Elysian Fields Avenue and the first half month's rent was paid by Ann in the name of Johnson; that she had paid rent to Ann and she

1. Ann Aias testified that her legal name was Ann Lynn Johnson. She further testified that she and Norbert Aias were married. In the brief of defendants she

is designated as "Lynn Ann Johnson (also known as Lynn Ann Aias)." During argument it was conceded that she is the "common law" wife of Norbert Aias.

and Ann rented together from the landlord; that she had a bedroom but the whole house was considered partly hers, her belongings being in the living-room, bathroom and kitchen.

Miss Malone told the officers she was living with Lynn Johnson and Norbert Aias and gave them permission to search the residence (which bears Municipal Number 1235 Elysian Fields Avenue) ; her employer permitted her to leave her job, and she accompanied the officers to the premises.

Officer Comstock testified[2] that upon their arrival at the house he and Officer Hand went to the rear entrance; that upon reaching the rear of the house, he could smell an odor of paregoric and assumed that it was being cooked or had just been cooked;[3] that he and Officer Hand then forced the rear door open, because he felt that evidence was being destroyed. He stated that upon entering the house, he found the following evidence in the kitchen: "On the table there was a hypodermic needle cleaner; a large glass containing a white liquid which I thought to be water; a China mug with a small piece of cotton in it; a hypodermic needle holder, a plastic affair; a roll of cotton, red cross cotton; on the mantel piece in the kitchen, some three feet from the table was a roll of Reynolds wrap encased in a box, a regular box. In the box, I found a medicine drop-per and containing what appeared to be cooked paregoric." He further testified that he and Officer Hand passed through the kitchen, seeing what they determined to be narcotic paraphernalia spread out on the kitchen table, and continued to the front of the house where he came upon Norbert Aias standing in the second room from the front. Officer Comstock stated, " * * * as I got within about two feet of him, I saw him drop a hypodermic needle to the floor which I picked up immediately. The lady, Mrs. Johnson, was near the front door."

While Officers Comstock and Hand were conducting their investigation in the rear, Officer Warner and Evelyn Malone were at the front door.

Officer Warner testified that Miss Malone attempted to open the front door with her key, but that the door was locked with a safety lock from the inside and the key would not open the door; that Miss Malone knocked and the following events transpired:

"Yes, Lynn Ann Johnson or Ann Aias. I know her as Lynn Johnson mostly. She came to the front door and looked out the curtain and she saw Miss Malone and I was standing right next to Miss Malone so I asked her to open the door and she said, 'okay, okay I'm opening the door,' and she stood there and the door wasn't being opened

---

2. Officer Hand did not testify.

3. Paregoric becomes a narcotic when cooked.

and she said, 'all right, I'm opening the door.' She stood there, I guess; for two or three minutes I kept hollering, 'open the door, it's the police.' I had my folder out and she knows me well. She kept saying * * * I kept hollering, 'open the door' and so she took about two minutes or so before she opened the door. As I entered the address, the house, with Miss Malone, Lynn Ann Johnson was in the front of the house at the door, she had opened the door. Norbert Aias came to the front of the house, he was right at the second room of the house when I entered the house. Officer Comstock and Hand were immediately following Norbert Aias, they were right behind him coming through the house. *The subjects were placed under arrest, Lynn Ann Johnson and Norbert Aias were placed under arrest.* As I entered the house, I could smell as I got in, it was a strong odor and I had smelled this same odor before and to me it smelled like paragoric had been cooking. When I was in the front room, I could smell it. * * * A detailed search was made in the kitchen by Officers Hand, Comstock and myself in the presence of the defendants and Miss Malone; * * * At that time, we examined the subjects' arms. Lynn Ann Johnson, first. Lynn Ann Johnson had numerous marks on her arms which appeared to me to be hypodermic marks. They were also discolored, they had black and blue marks around which we notice on a lot of paregoric addicts. They have these bruises with the hypodermic needle mark in their arm. It leaves them with a large bruise on a lot of occasions. We examined Norbert Aias' arms. Norbert Aias had blood coming from one of his arms from a hypodermic needle mark and he had numerous hypodermic needle marks in his arms." (Emphasis ours.)

No search warrant was secured by the officers before they searched the premises, confiscated evidence, and arrested the defendants. A qualitative analysis made of the cooked down paregoric disclosed that it contained opium, which when separated into some of its component parts contained morphine and codeine. The present prosecution ensued.

Before trial on the merits counsel for the defendants filed a "Motion to Suppress Evidence," alleging in part:

"That in this particular case, the evidence sought to be used by the State in its prosecution against the said Ann Aias and Norbert Aias was obtained by an unconstitutional search and seizure and therefore, inadmissible in the State's prosecution of this case under the Fourth and Fourteenth Amend-

ments of the United States Constitution, as decided in the recent case of Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961); that the Constitutional guarantee or right of privacy and the guarantee against unlawful search and seizures granted through the Fourth and Fourteenth Amendments of the U. S. Constitution is enforceable against the State through the due process clause of the Fourteenth Amendment of the U. S. Constitution, as decided by the case of Mapp v. Ohio, hereinabove cited.

"The position of the U. S. Supreme Court on the inadmissibility of the evidence obtained through an illegal search and seizure was reaffirmed in the case of William Marcus et al. v. Search Warrants of Property at 104 E. 10th Street, Kansas City, Missouri, reported in 367 U.S. 717, 81 S.Ct. 1708, 6 L.Ed.2d 1127 Reporter.

\* \* \* \* \* \*

"That the evidence sought to be used by the State in the instant case was the result of an illegal search and seizure. The provisions of the United States Constitution guaranteeing privacy against unlawful and illegal searches and seizures which the Federal authorities are obliged to follow are now binding upon all of the states in their criminal prosecutions, as decided by Mapp v. Ohio."

The trial court denied the above motion and a bill of exceptions was reserved to its ruling.

The matter proceeded to trial, and during its course another bill of exceptions was reserved when the trial judge refused to suppress the following evidence: S–1, one bottle from Bel Vue Drugstore; S–2, plastic bag together with contents; S–3, plastic envelope containing paper towel; S–4, brown envelope containing two needles; S–5, aluminum pot; S–6, glass; S–7, Red Cross cotton; S–8, large bottle medicine; S–9, small bottle of medicine; S–10, four empty bottles; S–11, 2 black books; S–12, empty bags; S–13, brown envelope containing tinfoil; S–16, cardboard containing names of drugstores; S–17, jax bag.

In this Court defendants contend that the trial court's ruling on the Motion to Suppress Evidence and its other rulings should be overruled and reversed and the case against defendants dismissed because:

"1. *The enforcement officers had abundant opportunity to obtain a search warrant.* (Said officers knew when they located Evelyn Malone that they were going to the home of Norbert Aias and Lynn Ann Johnson (also known as Lynn Ann Aias). They did not know what they might find there until they arrived on the scene.)

"2. The evidence showed that Lynn Ann Johnson (also known as Lynn Ann Aias) was the one who rented the premises from

the landlord, and was the one who paid the rent to the landlord and received a receipt in her name *only*.

"3. Evelyn Malone was allowed to stay as a 'roomer' in the home of Norbert Aias and Lynn Ann Johnson (also known as Lynn Ann Aias) under an agreement whereby she would contribute fifty per cent of the rent. She was not considered a tenant but was a sub-tenant from Lynn Ann Johnson.

"4. When Officers Comstock and Hand walked into the alleyway of the premises on Elysian Fields Avenue, that in itself constituted an illegal search and seizure for the reason that they did not have probable cause at that time to make any arrest or seizure.

"5. It is contended that even after Officers Comstock and Hand smelled what they thought was paregoric cooking, they would still have had time to secure a search warrant and be allowed in or break into the premises without any material change in the situation, except perhaps, that the residue of the cooked down paregoric might have been disposed of.

"All of the other evidence in the case would have been intact, and could have been found after a reasonable search, and, in addition, the very fresh tract mark on the arm of Norbert Aias could have been easily seen by the arresting officers.

"6. Evelyn Malone had no right or authority to allow anyone into or on the premises without the authorization of Lynn Ann Johnson or Norbert Aias.

"7. After first contacting Evelyn Malone, anyone of the officers, knowing that they were going to the home of Norbert Aias and Lynn Ann Johnson (also known as Lynn Ann Aias) could have easily and speedily obtained a search warrant and met his fellow officers in the vicinity of the Aias home, and could have made a legal search and seizure, and a resulting legal arrest of both defendants."

The State contends that the police officers entered the residence 1235 Elysian Fields Avenue legally; that they immediately arrested Ann and Norbert Aias; that the search which followed was permissible as incidental to a valid arrest; and that therefore under the decisions of the United States Supreme Court the search was reasonable, and the fruits thereof are admissible in evidence.

Posed for our determination, therefore, are the questions of whether the arrest of Ann Aias and Norbert Aias was lawful and whether the subsequent search and seizure was reasonable. Officers Comstock, Warner and Hand had no warrants for either the arrest or the seizure.

LSA–R.S. 15:60 provides:

"Any peace officer may, without a warrant, arrest a person;

"(1) For the commission of any felony or misdemeanor committed in his presence;

"(2) When such person has committed a felony although not in the presence of the officer;

"(3) When a felony in fact has been committed and he has reasonable cause to believe that such person has committed it;

"(4) When he has reasonable cause to believe that a felony has been committed and reasonable cause to believe that such person has committed it;

"(5) When he has received positive information by written, telegraphic or other authoritative source that another officer holds a warrant for such arrest."

LSA–R.S. 15:72 provides:

"Forcible entry in making arrest; when authorized

"To make an arrest, * * * a peace officer * * * or in cases of felony when authorized without a warrant, may break open an inner or outer door of any building in which the person to be arrested is or is reasonably believed to be if, after he has announced his purpose, he is refused admittance."

The testimony is in conflict as to how the front door at 1235 Elysian Fields Avenue was opened. Ann Aias testified that she did not open the door; and that there was only one lock. Evelyn Malone said that the door was locked from the inside and she could not get into the house with her key; that she did not know whether there were two locks on the door. Officers Warner and Comstock testified that Mrs. Johnson opened the door.

The testimony is replete to the effect that Norbert Aias and Ann Aias were narcotics suspects.

In our opinion the testimony of record is to the effect that the arresting officers had reasonable cause to believe that a felony had been committed; they had reasonable cause to believe that a felony was being committed when they arrived at 1235 Elysian Fields Avenue; they had been alerted by a physician that Ann Aias "continually bothered" him for paregoric prescriptions. Officers Comstock and Hand smelled a suspicious odor as they walked to the back of the house; they were trained and could detect an odor of cooking paregoric. Their belief that opium was being manufactured from the paregoric was reasonable; their suspicions were correct. Officer Warner smelled the paregoric the moment he entered the house through the front door; he also had reasonable cause to believe that a felony had been committed at the premises or was being committed when he was denied entrance upon knocking at the door.

"From our examination of the authorities an arrest can be made where there is probable cause or surrounding

suspicious circumstances. O'Malley v. Whitaker, 118 La. 906, 43 So. 545; Dunson v. Baker, 144 La. 167, 80 So. 238." Barfield v. Marron, 222 La. 210, 62 So.2d 276.

"Nor can we agree with petitioner's second contention that Marsh's information was insufficient to show probable cause and reasonable grounds to believe that petitioner had violated or was violating the narcotic laws and to justify his arrest without a warrant. * * *

" 'In dealing with probable cause, * * * as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.' Brinegar v. United States, supra, 338 U.S. at page 175, 69 S.Ct. at page 1310 [93 L.Ed. 1879]. Probable cause exists where 'the facts and circumstances within their [the arresting officers'] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that' an offense has been or is being committed. Carroll v. United States, 267 U.S. 132, 162, 45 S.Ct. 280, 288 [69 L.Ed. 543]." Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327.

"The fact that the arresting officers broke through the door in the process of making the arrest does not make the arrest illegal. While there seem to be no Louisiana cases directly at point, I can find nothing in the jurisprudence of Louisiana to indicate in any way that such a method of making an arrest, under appropriate circumstances, would be illegal. In the case of Williams v. United States, 9 Cir., 273 F.2d 781, the Court held that even though a California Statute provided for forced entry after a demand for admittance had been made and denied, the fact that no demand for admittance was made prior to the forced entry did not violate the petitioner's constitutional rights. The Court held there that if the officer's peril would have been increased or the arrest frustrated had he demanded entrance first, then an immediate forced entry was justified. This Court now adopts the reasoning stated in the Williams case and the cases therein cited, and holds that under the circumstances of this case, the forced entry made by the arresting officers was entirely justified and legal." State of Louisiana ex rel. Naylor v. Walker, Warden, Louisiana State Penitentiary, D.C., 206 F.Supp. 544.

■ We conclude that under the facts and circumstances in the instant case, the arresting officers had probable cause and

reasonable grounds to believe that Norbert Aias and Ann Aias were violating LSA–R.S. 40:962 of the State of Louisiana, relating to narcotic drugs, at the time they were arrested. The arrest was therefore lawful.

Amendment IV to the Constitution of the United States provides:

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

Article I, Section 7, of the LSA–Constitution of 1921, provides:

"The right of the people to be secure in their persons, houses, papers and effects against unreasonable searches and seizures, shall not be violated, and no such search or seizure shall be made except upon warrant therefor issued upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized."

In Weeks v. United States, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652, the United States Supreme Court held that, "The effect of the 4th Amendment is to put the courts of the United States and Federal officials, in the exercise of their power and authority, under limitations and restraints as to the exercise of such power and authority, and to forever secure the people, their persons, houses, papers, and effects, against all unreasonable searches and seizures under the guise of law. This protection reaches all alike, whether accused of crime or not, and the duty of giving to it force and effect is obligatory upon all intrusted under our Federal system with the enforcement of the laws. The tendency of those who execute the criminal laws of the country to obtain conviction by means of unlawful seizures * * * should find no sanction in the judgments of the courts, which are charged at all times with the support of the Constitution, and to which people of all conditions have a right to appeal for the maintenance of such fundamental rights." This rule became known as the "Exclusionary Rule."

In Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (decided June 19, 1961), the United States Supreme Court held that the "Exclusionary Rule" of the Weeks case, supra, is an essential part of both the Fourth and Fourteenth Amendments to the United States Constitution. It held that the Fourth Amendment's right of privacy was enforceable against the States through the "Due Process Clause" of the Fourteenth Amendment, stating that it was enforceable against the States by the same sanction of exclusion as is used

against the Federal Government. The Court concluded that evidence obtained by unconstitutional search was inadmissible in a State prosecution and vitiated conviction under the Fourteenth Amendment; it overruled Wolf v. Colorado, 1949, 338 U.S. 25, 69 S.Ct. 1359, 93 L.Ed. 1782. The Court did state: " * * * Because there can be no fixed formula, we are admittedly met with 'recurring questions of the reasonableness of searches,' but less is not to be expected when dealing with a Constitution, and, at any rate, '[r]easonableness is in the first instance for the [trial court] to determine.' United States v. Rabinowitz, 1950, 339 U.S. 56, 63, 70 S.Ct. 430, 434, 94 L.Ed. 653."

In the case of United States v. Rabinowitz, 339 U.S. 56, 70 S.Ct. 430, 94 L.Ed. 653, the defendant was charged with selling and possessing and concealing forged and altered obligations of the United States with intent to defraud. A search was made of defendant's premises after defendant had been validly arrested, the arresting officers being armed with a valid warrant for arrest. The officers found and seized 573 stamps on which it was later determined that overprints had been forged. The United States Supreme Court held that defendant's motion to suppress the evidence was properly denied by the district court. It stated:

"A rule of thumb requiring that a search warrant always be procured

whenever practicable may be appealing from the vantage point of easy administration. But we cannot agree that this requirement should be crystallized into a sine qua non to the reasonableness of a search. It is fallacious to judge events retrospectively and thus to determine, considering the time element alone, that there was time to procure a search warrant. Whether there was time may well be dependent upon considerations other than the ticking off of minutes or hours. The judgment of the officers as to when to close the trap on a criminal committing a crime in their presence or who they have reasonable cause to believe is committing a felony is not determined solely upon whether there was time to procure a search warrant. Some flexibility will be accorded law officers engaged in daily battle with criminals for whose restraint criminal laws are essential.

"It is appropriate to note that the Constitution does not say that the right of the people to be secure in their persons should not be violated without a search warrant if it is practicable for the officers to procure one. The mandate of the Fourth Amendment is that the people shall be secure against *unreasonable* searches. It is not disputed that there may be reasonable searches, incident to an arrest, without a search warrant. Upon acceptance of this es-

tablished rule that some authority to search follows from lawfully taking the person into custody, it becomes apparent that such searches turn upon the reasonableness under all the circumstances and not upon the practicability of procuring a search warrant, for the warrant is not required. To the extent that Trupiano v. United States, 334 U.S. 699, 68 S.Ct. 1229, 92 L.Ed. 1663, requires a search warrant solely upon the basis of the practicability of procuring it rather than upon the reasonableness of the search after a lawful arrest, that case is overruled. The relevant test is not whether it is reasonable to procure a search warrant, but whether the search was reasonable. That criterion in turn depends upon the facts and circumstances—the total atmosphere of the case. It is a sufficient precaution that law officers must justify their conduct before courts which have always been, and must be, jealous of the individual's right of privacy within the broad sweep of the Fourth Amendment." (Emphasis ours.)

Counsel for the defendants herein contend that the Rabinowitz case, supra, has been overruled by the case of Chapman v. United States, 365 U.S. 610, 81 S.Ct. 776, 5 L.Ed.2d 828 (decided April 3, 1961). In that case, state police officers, acting without a search warrant but with the consent of the landlord, entered Chapman's rented premises through an unlocked window during his absence; they found and seized an unregistered distillery and 1,300 gallons of mash. Chapman was later indicted for violations of the federal liquor laws. The trial court overruled defendant's motion to suppress evidence; the Court of Appeals for the Fifth Circuit affirmed. The United States Supreme Court, relying on the case of Johnson v. United States, 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436, held that the search was unlawful, and that since evidence obtained through the search was admitted at the trial, the judgment of the Court of Appeals must be reversed. It stated:

"Here, as in that case, 'No reason is offered for not obtaining a search warrant except the inconvenience to the officers and some slight delay necessary to prepare papers and present the evidence to a magistrate. These are never very convincing reasons and, in these circumstances, certainly are not enough to by-pass the constitutional requirement. No suspect was fleeing or likely to take flight. The search was of permanent premises, not of a movable vehicle. No evidence or contraband was threatened with removal or destruction, except perhaps the fumes which we suppose in time would disappear.' 333 U.S. at page 15, 68 S.Ct. at page 369.

"We think it must be concluded here, as it was in Johnson, that 'If the officers in this case were excused from the constitutional duty of presenting their evidence to a magistrate, it is difficult to think of a case in which it should be required.' * * * "

In Johnson v. United States, 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436, detectives, having been informed that the scent of opium was emerging from a hotel room, went to the hotel with neither a warrant for arrest nor a search warrant; they knocked at the room door and were granted entrance; they arrested the occupant and made a search which turned up incriminating opium and smoking apparatus, the latter being warm, apparently from recent use. In holding that the evidence should be suppressed, the United States Supreme Court stated:

"The Government contends, however, that this search without warrant must be held valid because incident to an arrest. This alleged ground of validity requires examination of the facts to determine whether the arrest itself was lawful. Since it was without warrant, it could be valid only if for a crime committed in the presence of the arresting officer or for a felony of which he had reasonable cause to believe defendant guilty.

&ast; &ast; &ast; &ast; &ast; &ast;

"Thus the Government is obliged to justify the arrest by the search and at the same time to justify the search by the arrest. This will not do. An officer gaining access to private living quarters under color of his office and of the law which he personifies must then have some valid basis in law for the intrusion. Any other rule would undermine 'the right of the people to be secure in their persons, houses, papers and effects,' and would obliterate one of the most fundamental distinctions between our form of government, where officers are under the law, and the police-state where they are the law.

" * * * When the right of privacy must reasonably yield to the right of search is, as a rule, to be decided by a judicial officer, not by a policeman or Government enforcement agent." See, United States v. Di Re, 332 U.S. 581, 68 S.Ct. 222, 92 L.Ed. 210.

Having concluded, as stated supra, that the arrest of Norbert Aias and Ann Aias was lawful, we deem it fitting to observe that we find no federal statute which would have controlled the arrest.

"We believe, however, that in absence of an applicable federal statute the law of the state where an arrest without warrant takes place determines its validity. By one of the earliest acts of Congress, the principle of which

is still retained, the arrest by judicial process for a federal offense must be 'agreeably to the usual mode of process against offenders in such state.' There is no reason to believe that state law is not an equally appropriate standard by which to test arrests without warrant, except in those cases where Congress has enacted a federal rule. Indeed the enactment of a federal rule in some specific cases seems to imply the absence of any general federal law of arrest." United States v. Di Re, 332 U.S. 581, 68 S.Ct. 222, 92 L.Ed. 210, 217.

Because the United States Supreme Court has held that the "Due Process Clause" of the Fourteenth Amendment to the United States Constitution extends to the Fourth Amendment to the Constitution, we felt that it was necessary and incumbent upon us to set forth in detail the reasoning of the Court. Our analysis of the jurisprudence leads us to conclude that the United States Supreme Court has not as yet narrowed its interpretation of the law to hold that a search warrant is absolutely necessary before a search and seizure can be made and the evidence used at trial in prosecutions similar to the instant matter. Justice Clark delivered the opinion of the Court in the Mapp case, supra, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (decided June 19, 1961); Justices Harlan, Frank-

furter and Whittaker dissented. Justice Whittaker delivered the opinion of the Court in the Draper case, supra, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327, and in the Chapman case, supra, 365 U.S. 610, 81 S.Ct. 776, 5 L.Ed.2d 828 (decided April 3, 1961); Justice Clark dissented in the Chapman case, stating, "If Rabinowitz is no longer law the Court should say so. It is disastrous to law enforcement to leave at large the inconsistent rules laid down in these cases. It turns the well springs of democracy—law and order—into a slough of frustration." The Johnson case, supra, was delivered by Justice Jackson and there were four dissents.

In the instant case we find that the search of the premises 1235 Elysian Fields Avenue was a reasonable search, executed on probable cause; the seizure was likewise reasonable. The search and seizure were subsequent and incidental to the legal arrest; we conclude that under the circumstances herein the search and seizure were valid. Under such findings, the evidence confiscated at the time of the search and seizure was legally admissible during trial. The rulings of the trial judge were correct. The bill of exceptions is without merit.

For the reasons assigned, the conviction and sentences are affirmed.

FOURNET, C. J., absent.