SAVOY, Judge.
This is a suit for damages for false imprisonment, slander and libel. Originally, plaintiff, James L. Vidrine, and Jimmy Reed filed suit, as co-plaintiffs, against the City of Crowley alleging that on May 24, 1969, certain of defendant’s police officers did wrongfully and unlawfully charge that each of the plaintiffs did “willfully and unlawfully possess and have under his control, a narcotic drug, to-wit: Ionamine — 30 and Biphetamine — 20”. Plaintiffs alleged they were guilty of no crime, that they had no narcotic drugs in their possession, but rather had only central nervous system stimulants, better known as “diet pills”, and these were obtained by plaintiff Vidrine pursuant to a prescription issued by a medical doctor. It is alleged that plaintiffs were illegally confined for a period of approximately 12 hours until they could secure a *793 bond for their release, and that the defendant, through its agents, did cause the said illegal charges to be published in several newspapers and to be broadcasted over radio and television. The petition was amended to join as defendants, A1 Gibson, the Chief of City Police, and Dudley J. Hoffpauir, a Captain of the City Police. Subsequently, plaintiff Reed filed a motion to dismiss his cause of action, with prejudice, and the suit was dismissed as to him, leaving Vidrine as the only party plaintiff.
Defendants, A1 Gibson and Dudley J. Hoffpauir, filed an answer generally denying the allegations of plaintiff’s petition. The City of Crowley filed an answer, wherein liability was generally denied and it was alleged that Dudley J. Hoffpauir, in making the charges against plaintiff, was acting as an agent of the State of Louisiana in enforcing a state statute, and that no offense was charged or chargeable under any ordinance of the City, that the police officers of the City are paid a salary by the State and are, therefore, agents of the State and not the City while performing said actions. Alternatively, it was alleged that plaintiff and Reed were in possession of certain pills reasonably believed by Dudley J. Hoffpauir to be Ionamine — 30 and Biphetamine — 20 and said persons were not in immediate possession of any prescription therefor, that said drugs were not in a container with an appropriate druggist’s label, and therefore, Captain Hoffpauir had reasonable grounds for filing charges against plaintiff and Reed for violation of the pertinent State statute. It was alleged that in making arrests under such charges, the arresting officer or officers were executing a warrant of arrest issued by a Court empowered to issue same, and therefore said officers cannot be validly accused of making a false arrest. It was further averred that in making available to the news media lists of charges filed, any police officers so doing were acting as individuals and were not performing any duties for or acting as agents of the City.
Plaintiff filed a motion to proceed in forma pauperis, and after a hearing the motion was denied. After trial on the merits, judgment was rendered for all defendants, and plaintiff Vidrine’s suit was dismissed at his cost. From this judgment, plaintiff has filed an appeal to this court.
The record shows that on May 24, 1969, just after daybreak, plaintiff Vidrine and Jimmy Reed were seated in plaintiff’s car in the driveway of a house in Crowley that was occupied by the husband of plaintiff’s sister. Plaintiff had been by the house earlier, and a complaint had been made to the city police, but plaintiff had left before the police arrived. When plaintiff returned and parked in the driveway, another call was made to the city police. Carl Hoff-pauir, a city police officer, testified that as he and another policeman approached the area from a distance of about a block, he heard the horn of plaintiff Vidrine’s car, so he pulled into the driveway behind plaintiff. Upon asking plaintiff what he was doing there, Hoffpauir testified that plaintiff replied “My no good-brother-in-law is shacked up in that house with that-whore, and I’m gonna kill him.” Hoffpauir testified plaintiff was drinking, carrying on and crying at the time. Hoff-pauir then arrested both plaintiff and Reed for disturbing the peace, frisked each of them and placed them in the police patrol car. Hoffpauir testified he then asked plaintiff whether he wanted one of the officers to drive his car to the police station or whether he wanted a wrecker to haul it off, and that plaintiff authorized the officers to drive the car. As Hoffpauir entered the car, he noticed a .22 rifle on the rear seat, took it out, noticed it was loaded, and placed it in the patrol car. As he did, plaintiff advised him that he also had a pistol in the glove compartment of his car, and this gun, also loaded, was placed in the patrol car. Hoffpauir testified the plaintiff’s car was not searched, .and the two guns and a can of beer were the only items taken from the car. At the police station, plaintiff and Reed were told to *794 take everything from their pockets. Then Hoffpauir examined plaintiff and noticed something in his right front pocket. He testified he told plaintiff he missed something, and plaintiff then pulled out an old prescription container, which had no label and contained some yellow and black pills. Hoffpauir testified the container was not cracked or damaged and had a cap on it. Hoffpauir then advised plaintiff that he was going to be charged with illegal possession of drugs and advised him of his rights. Plaintiff stated he wanted to call his lawyer, so Lt. Gautreaux took him to make the phone call. Hoffpauir then proceeded to examine Reed, who was also charged with illegal possession of drugs. At this point, defendant, Captain Dudley Hoffpauir, took over and had a warrant issued and signed by the district judge. Officer Carl Hoffpauir testified he checked a Physicians Desk Reference Book to confirm that the pills were Amphetamine — 20s, and later called out a pharmacist who identified the pills. Carl Hoffpauir testified he did not have anything to do with the affidavit filed against plaintiff by Captain Hoffpauir. He also testified he was not aware of a difference between narcotics and amphetamines. He testified he reasonably thought plaintiff had violated the central nervous system drug law. He stated that Chief Gibson was not present until after the charges were filed. He testified that when he asked plaintiff for his prescription for the drugs, he only answered, “I left it home”, and that when he advised plaintiff of his rights, plaintiff said nothing more than that he wanted to call his lawyer, which he did. The record shows plaintiff was officially booked at the station at 7:55 A.M. and was released at 10:35 A.M.
Plaintiff testified he went to see and to ask his brother-in-law to leave his sister alone. He stated he arrived at Crowley about 6:30 or 6:40 A.M., that he knew approximately where his brother-in-law lived, and passed by the house to go to a restroom at a service station. He stated that when he returned to the house, he honked the horn twice, at about 5 minute intervals. He saw someone come to the window and waited for him to come out. He stated the police car came up as he sounded the horn the second time. He stated the police officer just grabbed him, frisked him and then put handcuffs on him. He testified the police searched his car without permission, and that one of the officers just said he was going to drive the car without asking permission. He testified his brother-in-law came out after the officers arrived and said, “Well, what did you do? Did you come here to shoot me?”, and that he stated he did not and that he did not know the rifle was in the car, and then, “As long as you think I came here to kill these people, I have a gun in the glove compartment, too.” He stated that by this time Reed was picking up the pills from the floor of the car, and the officers asked for them. He testified he kept the pills on the dashboard of the car, and that as they had turned a corner while coming from the service station the pills fell to the floor of the car, and evidently Reed had put his foot on them and cracked the bottle, and the pills had leaked out on the floor of the car. He testified the label was always in the bottle of pills and that he told the police officers 10 to 12 times that the drugs had been prescribed for him by Dr. Deshotel of Basile and filled by a pharmacist. He testified he was notified he was being transferred to the parish jail as he was being charged with illegal possession of narcotics, that he called his lawyer and talked with a bondsman, and finally obtained someone to sign his bond, and he was released between 10:30 and 11:00 A.M.
George Watson of Crowley testified he saw plaintiff and another man just after daybreak parked at the front of his house. He phoned the city police who came after Vidrine had left. Then in about 45 minutes they came back, and his wife called the police. He stated he did not go out until the police came and he then went only into the carport. He testified his wife had seen the car first when she let out the dog, and they had been concerned since a car *795 had followed his small girl to school the previous morning.
John W. Johnson, an attorney, testified he received the call from plaintiff, and his main concern was to get plaintiff released from jail. He phoned a bondsman and then visited plaintiff at the jail. He testified he was shown an affidavit signed by Captain Hoffpauir, but no warrant of arrest was shown or mentioned at the time. He stated that he was shown two containers, one had nothing in it, and he thought, but would not swear to it, that the other had a white slip or label in it. He was also shown some yellow and black pills in an envelope. He testified he told both Mr. Hoffpauir and Chief Gibson that one call to Basile to either Dr. Deshotel or the pharmacist would have cleared up the whole matter as to what the pills were, and would have saved everybody a lot of trouble. He stated that he contacted Chief Gibson the following week and was told all the charges would be dropped against plaintiff concerning the pills, but they were not. He testified he phoned the doctor to verify that the prescription was issued properly to plaintiff, but he did not think he brought a copy of the prescription to the police. He also requested that Chief Gibson issue a retraction for the newspapers, but this was not done. He testified he was told that plaintiff had some loose pills either on his person or in the car, “I think, probably, on his person, also.”
The affidavit against plaintiff was filed in evidence. It is dated May 24, 1969, is signed by Captain Dudley J. Hoffpauir of the city police of Crowley, and states that plaintiff did on the 24th day of May, 1969, “willfully and unlawfully possess and have under his control, a narcotic drug to-wit: Ionamine — 30 and Biphetamine — 20.” Also filed in evidence was a warrant of arrest dated and signed May 24, 1969 by Char T. Everett, District Judge. Judge Everett fixed the bond in the case at $1,500.00. The charge quotes directly the wording of the affidavit. The record also contains the appearance bond signed by plaintiff and his surety prior to plaintiff’s release, which contains the quoted charge.
An article concerning the charges against plaintiff appeared in two Crowley newspapers on Monday, May 26, 1969. Both articles state that according to Chief Gibson, plaintiff and Reed were charged with the possession of central nervous system drugs. One of the articles later refers to “narcotics possession”. The articles also mentioned the charges of disturbing the peace.
The executive editor of the Crowley Post Herald testified he made daily trips by the Crowley police station and the Sheriff’s office, and that he gained his information from the official records. He stated he did not talk with any of the city police officers before printing the articles, but later heard that guns were involved and then talked with Chief Gibson, and that it was customary in printing such articles to give credit for the releases to the department heads.
John Toups, a friend of plaintiff, testified he put the .22 rifle in plaintiff’s car the night before it was found without telling the plaintiff. It was stipulated that Reed was not served and that if he would be called to testify, he would testify substantially the same as plaintiff. The record shows that defendant, Dudley L. Hoff-pauir, was seriously ill in the hospital at the time of the trial, and it was stipulated that if Captain Dudley L. Hoffpauir and Officer Vernon Gautreaux were called to testify, they would testify substantially the same as Officer Carl Hoffpauir.
The first issue for consideration is whether or not plaintiff was falsely imprisoned. A necessary element of false imprisonment is that the arrest is illegal. Plaintiff based his damage suit as to false imprisonment on the legality of the arrest on the drug possession charge. That arrest, however, followed and was tied in with the arrest for disturbing the peace. The record shows that the initial arrest of the plaintiff on the charge of disturbing the peace was lawful. The police officers, aft *796 er receiving complaints by alarmed citizens, proceeded to the scene of the disturbance in the early morning hours and witnessed the unusual actions of plaintiff under unusual circumstances. The officers heard plaintiff sound the horn of his car and witnessed his loud, profane and threatening language and unusual behavior. We find the officers had probable cause for arresting plaintiff on a charge of disturbing the peace.
Accepting the facts as testified to by Officer Hoffpauir, the drugs were found on plaintiff during the booking of plaintiff on the charge of disturbing the peace. There were two types of central nervous system stimulants in a container without a label of a pharmacist, and the defendant failed to explain his possession thereof without a prescription. The affidavit was then signed against plaintiff and it appears the plaintiff was detained for a period of time for a warrant of arrest to be signed and the bond fixed. However, this was also during the time plaintiff was incarcerated on the charge of disturbing the peace. Plaintiff was then formally arrested on the drug possession charges and he was transferred to the parish jail where he signed the bond to be released. This latter arrest was made on a warrant of arrest, which was properly issued, and would not be a basis for a charge of false arrest. Under these facts, this court finds no basis for damages for false imprisonment, absent bad faith or malice on the part of the police officers, or lack of probable cause.
The evidence in this case indicates that plaintiff was not guilty of violating either the narcotics law or the central nervous system law. The drugs he had were amphetamines, or central nervous system stimulants, and were not narcotics, and under the applicable statute, it is illegal to possess these drugs “unless such person obtained such drug on the prescription of a practitioner, or unless such person obtained such drug by direct delivery from a practitioner for bona fide medical use;” R.S. 40:1033. The law contains no regulation requiring that amphetamines be kept in their original container as provided in R.S. 40:971 which regulates narcotic drugs. The evidence introduced into this case shows that plaintiff did in fact have a prescription from a doctor for the drugs.
However, the issue is not the guilt or innocence of plaintiff on the drug possession charges, but is whether or not the charges were made against plaintiff in bad faith and without probable cause.
“Public law enforcement officers acting with probable cause and without malice are not liable in damages for making an arrest; no police officer should ever fear that doing his duty as he in good faith reasonably sees it will subject him to liability.” Hughes v. Standidge, 219 So.2d 6, (La.App. 4 Cir. 1969) and Barfield v. Marron, 222 La. 210, 62 So.2d 276 (1952).
Although the evidence is conflicting, this court finds no manifest error in the finding of the district court that Captain Hoff-pauir had probable cause and acted in good faith in bringing the charges against plaintiff. It is noted that there is no evidence or is it contended that Reed had a prescription. As to plaintiff, there is ample evidence to support the district court’s finding that no convincing evidence was furnished or offered by plaintiff as to his lawful possession of the drugs until after the charges were filed. Nor does the evidence establish that the police officers knew the charges were false or not subject to proof at the time the news media obtained knowledge of the charges. The record shows that the news media obtained the information by their usual course of procedure, and there is no showing as to any malice by anyone.
The charges written were erroneous as they charged plaintiff with possession of a narcotic drug, however, the charge continued by naming the drugs, which were amphetamines and not narcotics. One of the news articles contained this error, indicating that plaintiff and Reed were charged with possessing central nervous system drugs, and later in the article, with narcotics *797 possession. The other newspaper article indicated that the two men were charged with possession of central nervous system drugs, without indicating that the drugs were narcotic. Although there is a substantial difference between narcotics and central nervous system drugs, it is understandable how an error could be made in classifying a central nervous system drug as a “narcotic”. Since the warrant did specify the type “narcotic” that the defendants possessed, this court finds the error of no serious consequence. The record shows that the error in classification was made because of lack of knowledge on the part of the police officers and not because of malice. At the time of the arrest the record shows that the police officers believed plaintiff was guilty of illegal possession of drugs, and possibly so did plaintiff, although a later legal analysis of the applicable statute and an evaluation of the facts proved otherwise.
The record contains no proof of slander, and the claim of libel is based on the news articles which were obtained from the official records which were open for inspection. In the absence of a false charge made in bad faith and without probable cause, the subsequent news articles stating the alleged charges as officially written would not be a basis for a libel charge against defendants. We find the record does not establish plaintiff’s contention that the police officers knew the charges were false at the time the information as to the charges was furnished to the news media. Since the defendants were not guilty of a tortious act in filing the charges, they are not responsible for a news article based on the official records.
In view of our holding, the only other issue raised which needs to be considered is whether or not the district court erred in failing to allow the plaintiff to proceed in forma pauperis. The record shows that plaintiff was unemployed and drawing unemployment benefits of $50.00 a week. His wife had just started to work and was earning a gross pay of $64.00 a week. They had one child, and were living in a home owned by a relative, paying rent of $20.00 a month. Considering the evidence in the instant case, we do not find the trial judge abused the discretion vested in him in determining that plaintiff should not be allowed to proceed as a pauper. Hollins v. Moore, 220 So.2d 103 (La.App. 3 Cir. 1969).
For the reasons assigned, the judgment of the district court is affirmed. All costs of appeal are assessed to plaintiff.
Affirmed.