**UNITED STATES of America**

v.

**George COPES, Jr., Mary Elizabeth Copes, James Randolph, Maurice William Woolford, William Lloyd Sawyer, Melvin Clifton Hutt, Nathaniel Doane, and John Woolford.**

**Cr. No. 25476.**

United States District Court
D. Maryland.

March 1, 1961.

· Leon H. A. Pierson, U. S. Atty., and John R. Hargrove, Asst. U. S. Atty., Baltimore, Md., for plaintiff.

H. B. Mutter, Baltimore, Md., for defendant Sawyer.

THOMSEN, Chief Judge.

The indictment in this case charges in separate counts a conspiracy to violate federal statutes dealing with marihuana and various substantive offenses. 26 U. S.C.A. §§ 4744(a), 4741(a), 4751–4753, 4755 and 7237(a), I.R.C. of 1954. The defendant, William L. Sawyer, who is charged as a conspirator and with acquiring and transporting marihuana on or about September 28, 1960, at Salisbury, Wicomico County, Maryland, has moved to suppress certain evidence, admitted for the purposes of this motion to be approximately 458 pounds of marihuana, taken from his possession on September 28, 1960, in or near Salisbury.

### Findings of Fact

On September 27, 1960, Agent Wheatley of the Maryland Alcohol Tax Enforcement Unit received an anonymous telephone call. The caller stated that he had overheard a telephone conversation in a Pocomoke City tavern between an unidentified person and someone in New York about the pickup of a "stash" (which the agent understood to mean a quantity of illegally stored liquor) to be made between midnight and 2:00 o'clock the next morning, in a transaction involving a man named "Joe". Based upon previous investigations in the area, Wheatley believed he knew the identity of "Joe" and of the man who was calling New York, and suspected that the parties would meet at the Moon Glow Tavern, which is located on Route 13A just off Route 13 (the principal highway down the Eastern Shore) north of Princess Anne, in Somerset County, Maryland.

Wheatley began a surveillance of the tavern and of the two roads late that night. At about 1:00 p. m. he observed a Volkswagen bus turn off Route 13 and pull into the parking area by the tavern. The driver, who was later identified as

Sawyer, got out of the bus and threw the beam of a flashlight first one way and then the other along Route 13A. He then returned to the bus, and Wheatley was able to observe that it bore New York license plates 8–T–7910 and that it had no cargo and no occupant except Sawyer. About 20 minutes later an Oldsmobile, also bearing New York license plates, turned off Route 13 and pulled up alongside the bus. The two occupants of the car and Sawyer emerged from their respective vehicles and conferred, after which Sawyer and one of the men returned to the bus, the other to the car. Both vehicles then drove south on Route 13A. After following them a short distance, Wheatley saw them turn onto a road leading into the country. Being sure that if they were going to transport illegal liquor to New York they would soon return and head north on Route 13, Wheatley returned to that road and proceeded to a lighted area on the outskirts of Salisbury. At about 2:50 a. m., he observed both vehicles going north on Route 13, entering Salisbury. Two men were in the Oldsmobile and one in the Volkswagen bus. When the bus was forced to stop for a traffic light, the agent saw that it was loaded with burlap bags of the kind commonly used in the transportation of five gallon cases of illicit whiskey, which are packed in hay or sawdust to keep them from rattling and to conceal them from view. Wheatley turned on his siren and directed Sawyer, the driver of the bus, to pull over to the side of the road. Wheatley displayed his credentials and Sawyer showed his driver's license and a registration card, which showed that the bus belonged to James Randolph, one of the other defendants herein. Wheatley told Sawyer that he was looking for illegal alcohol and wanted to search the vehicle. Sawyer stated that he was not hauling whiskey, but without saying anything more, went around to the rear of the bus and opened the back door. Sawyer testified that he had said it was "not necessary" to inspect the car and that he had noticed that the agent was carrying a weapon on his hip. Wheatley said the

weapon was in a shoulder holster. However that may be, no threats were made and Sawyer acquiesced in the search. He was evidently counting on "bluffing it through".

Agent Wheatley reached his arm through two of the bags expecting to find concealed five gallon cans, but found only some leaves and similar material, which smelled like alfalfa. Sawyer said that they were tea leaves which he was taking to New York, where he and Randolph, with the help of an Indian, brew them into a drink which brings good luck. Continuing his search, Wheatley discovered in a third bag a plant—root, stem, leaves and seeds—which he knew to be neither alfalfa nor any other plant commonly grown on the Eastern Shore. Because of this fact and his recollection of having seen some marihuana plants years before, Wheatley concluded that the bags contained marihuana or some other item the possession of which would be illegal. Meanwhile, the Oldsmobile had returned to reconnoiter, and a state trooper had arrived, been sent in pursuit of the car, and had brought it back to the bus where Sawyer and the driver of the car denied knowing each other. Sawyer was taken into custody then and there, the bus and its cargo were seized, and the contents of the bags were identified as marihuana at the police barracks.

### Discussion

Sawyer contends that the search and seizure were (a) illegal under state law for lack of a warrant, citing the Annotated Code of Maryland, 1957 ed., Art. 2B, sec. 197, and (b) unreasonable and in violation of the Fourth Amendment. On either ground, he contends that the evidence cannot be used against him in a federal court.

■ Sawyer is charged with a federal crime in a federal court; federal standards govern the reasonableness of the search and seizure and the admissibility of the evidence in question, whether those standards are more strict or more lenient than those applied by the courts of the State. Elkins v. United States,

364 U.S. 206, 224, 80 S.Ct. 1437, 4 L.Ed. 2d 1669; Rios v. United States, 364 U.S. 253, 80 S.Ct. 1431, 4 L.Ed.2d 1708. However, on the point in question, I do not believe the Maryland law is different from the federal law.

Agent Wheatley was charged with the duty of preventing the illegal transportation, as well as the illegal sale, of intoxicating liquor. Md.Code, Art. 2B, sec. 191. He probably could not have obtained a search warrant or a warrant for the arrest of anyone on the basis of the telephone call he had received on September 27, but before he stopped the Volkswagen bus the information he had received over the telephone had been supplemented by the activity he had observed outside the Moon Glow Tavern, by the movements of the two vehicles, and by the apparent cargo of the bus as it proceeded north on Route 13 headed toward New York. At the time he stopped the bus he had a reasonable basis for his belief that the vehicle probably was being used to transport liquor which was subject to seizure.

In determining the reasonableness of a search without a warrant different factors come into play when the search is of a moving vehicle rather than of a home, especially where the officer has reasonable grounds to believe that the vehicle is then and there being used as a means of committing a crime. Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543; Brinegar v. United States, 338 U.S. 160, 69 S.Ct. 302, 93 L.Ed. 1879; Ray v. United States, 4 Cir., 255 F.2d 473; Patenotte v. United States, 5 Cir., 266 F.2d 647. Cf. Henry v. United States, 361 U.S. 98, 80 S.Ct. 168, 4 L.Ed. 2d 134; Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327.

The cases cited by defendant and his counsel, such as Turner v. State, 195 Md. 288, 73 A.2d 472, are not controlling. See Callahan v. State, 163 Md. 298, 162 A. 856; Silverstein v. State, 176 Md. 533, 6 A.2d 465; Bass v. State, 182 Md. 496, 505, 35 A.2d 155, as well as the federal cases cited above.

Agent Wheatley did not find any intoxicating liquor, but he found evidence that a felony—a violation of 26 U.S.C.A. §§ 4744(a), 4755,—was being committed in his presence. Therefore, like any ordinary citizen he had a right to arrest Sawyer and to turn over to the federal agents the means and the fruits of the crime. Carroll v. United States, 267 U.S. 132, at page 157, 45 S.Ct. at page 286; United States v. Hayden, D.Md., 140 F. Supp. 429, at pages 436, 437.

This decision makes it unnecessary to decide whether Sawyer's acquiescence in the search amounted to legal consent. See Grice v. United States, 4 Cir., 146 F.2d 849; Karwicki v. United States, 4 Cir., 55 F.2d 225.

### Conclusion and Order

The motions to suppress filed by Sawyer and his counsel are hereby denied.