160 So.2d 577

**STATE of Louisiana**

v.

**James PICKENS and Sylvester Alexander.**

**No. 46819.**

Jan. 20, 1964.

Rehearing Denied Feb. 24, 1964.

Wilson, Abramson, Maroun & Kaplan, Isaac Abramson, Shreveport, for defendants-appellants.

Jack P. F. Gremillion, Atty. Gen., M. E. Culligan, Asst. Atty. Gen., Ragan D. Madden, Dist. Atty., for appellee.

1. " * * * did wilfully and unlawfully commit simple burglary of the store building which houses the business establishment known as Glasgow's belonging to J.

HAMLIN, Justice:

The defendants, James Pickens and Sylvester Alexander, were jointly charged by bill of information with the commission of the crime of simple burglary,[1] an offense prohibited by LSA–R.S. 14:62; they were tried, found guilty, and sentenced to serve six years at hard labor in the state penitentiary. From their convictions and sentences they appeal to this Court, presenting for consideration three bills of exceptions.

Prior to trial, defendants filed Motions to Suppress Evidence in the instant prosecution and in another prosecution in which they were named as defendants. The cases were consolidated for the purpose of the trial of the Motions to Suppress, which motions were overruled.

The defendants applied to this Court for Writs of Certiorari, Prohibition, and Mandamus, which were refused with the notation: "Relators have an adequate remedy by appeal in the event of their conviction." 244 La. 221, 151 So.2d 693.

The State and counsel for defendants agreed that the testimony taken on the trial of the Motions to Suppress Evidence would be attached to and made a part of the present bills of exceptions.

Bill of Exceptions No. 1 was reserved to the trial court's overruling the Motion to Suppress Evidence filed in the instant pros-

L. Glasgow by entering said building without authority to do so and with intent to commit a theft therein, * * * "

ecution by counsel for the defendants prior to trial and the court's holding that the evidence obtained herein was secured with probable cause, although without a search warrant.

The Motion to Suppress Evidence recites in part:

"1. JAMES PICKENS and SYLVESTER ALEXANDER move this court to direct that all that property which was taken by the Sheriff or any peace officer of Lincoln Parish or the City of Ruston, and which was unlawfully seized and taken from your movers and their automobile without a valid search warrant or warrant of arrest and from which properties the State of Louisiana, through its District Attorney and other agents, secured information which they intend to use as evidence against them in these criminal proceedings, should be suppressed as evidence against your movers in any criminal proceedings.

"2. Your movers show that the unlawful search and seizure and arrest took place against the will and over the objections of your defendants and without a lawful search warrant or warrant of arrest.

" * * *

"4. Appearers show that on or about March 31st, 1963, the Sheriff and/or peace officers of the Parish of Lincoln and/or the City of Ruston searched the person and automobile of your defendants herein and removed therefrom certain articles more particularly known to the said District Attorney your appearers not having been furnished with any inventory or receipt from which they could ascertain the nature of the articles.

"5. Appearers show that to the best of their knowledge the officers, without a search warrant and without a warrant of arrest, removed loose money in various amounts unknown to your appearers, some in rolls, some bags reportedly having the name of places of business in Ruston, various boxes and articles having the names of companies or places of business in the City of Ruston, Louisiana, the exact description of which is unknown to your appearers for the reason that appearers have not been furnished with any information on this score.

"6. Your appearers show that they have been aggrieved by the actions of the Sheriff and/or peace officers of the Parish of Lincoln, Louisiana in illegally arresting, searching and seizing your appearers and their automobile without a lawful search warrant and without a warrant of arrest and attempting to use these articles as a means of securing the names of persons as wit-

nesses against your appearers as well as the articles themselves.

"7. Appearers show that they were lawfully in the possession of the automobile, a 1960 Imperial Chrysler, which was searched as above set forth and that said search and seizure was made without probable cause, without a search warrant and without any justification whatsoever.

"8. , That the above unlawful search, seizure and arrest was in violation of the 14th Amendment to the Constitution of the United States and in violation of Article 1, Section 7 of the Constitution of the State of Louisiana of 1921, as amended, and of Article 1, Section 2 of the Constitution of the State of Louisiana of 1921, as amended."

Bill of Exceptions No. 2 was reserved to the trial court's overruling the objection of counsel for the defendants to the introduction of evidence taken by police officers from the automobile driven by the defendants, as the evidence was taken without a search warrant, illegally and without probable cause.

Bill of Exceptions No. 3 was reserved to the overruling by the trial court of defendants' motion for a new trial, which incorporated the same matters raised in Bills of Exceptions Nos. 1 and 2.

Since the three bills are interrelated and raise the same issues, they will be discussed together.

The transcript of evidence taken on the trial of the Motions to Suppress and during the trial of the instant prosecution discloses that on Sunday, March 31, 1963, Joseph L. Glasgow, owner of a men's clothing business (Glasgow's) located in Ruston, Louisiana, visited his place of business around 2:15 P.M. (he had been there previously that day and found the premises in order) and immediately discovered that the office had been ransacked, all of the money had been taken out of the safe, and twenty-four suits were missing (the suits were later found hidden in the boiler room of an adjoining building). Glasgow also found that the back door to his premises was open (it had been closed) and that the bottom plywood panel had been broken out. After a few minutes of observation and making a determination that his business had been burglarized, Glasgow called the police. The burglary was reported to a desk sergeant, who telephoned the Manhattan Cafe where Captain Robert L. Goss, Lt. Willie Howard, and Patrolman Edward L. Lester were having coffee. The message that Glasgow's had been burglarized and that he should get to the store as fast as he could was communicated to Captain Goss, who in turn communicated the message to the other officers.

The three officers left the cafe immediately in a patrol car for the investigation. Upon arrival at Glasgow's, which faces east (west side of the street) on North Trenton Street (a thoroughfare running north and south), Patrolman Lester alighted from the patrol car and was stationed at the front of the store; the officers felt that the burglars might still be in the premises. Captain Goss and Lt. Howard proceeded in the patrol car to the corner of North Trenton and then turned west on Park Avenue. As they neared an alley which ran behind Glasgow's, paralleled North Trenton Street, and opened into Park Avenue, the officers saw a 1960 black Chrysler automobile approach; it was being driven three to five miles an hour in an easterly direction and was about 100 feet from the rear entrance to the Glasgow store; it was driven by the defendant Sylvester Alexander, who was accompanied by the defendant James Pickens, and Alexander was looking up the alley. Lt Howard, who had been with the Ruston Police Department for eleven years, testified that he knew the colored and white people around Ruston pretty well, and that he had never seen the defendants nor their automobile before March 31, 1963. From their actions Lt. Howard sensed and suspected that the defendants were not local boys, and he suggested that Captain Goss flag them. Captain Goss called to the men to stop their car; he parked the patrol car and ran down the alley, leaving Lt. Howard on Park Avenue in the patrol car. Lt. Howard alighted and yelled to the defendants, whereupon they stopped their car. During the trial Lt. Howard testified as follows:

"Captain Goss jumped out of the car and ran up the alley. The car began to speed up just a little bit and I jumped out on foot and run around behind the car and hollered to them to stop the car. Well, he stopped. And I went on up there and asked them where they were from and they told me Shreveport. And I asked him what was he doing driving slow and looking up the alley. He said he was supposed to pick up somebody at the train station there at twelve o'clock and they were looking for the train station. So I saw this box right here in between them on the front seat of the car. I asked them what was in the box and he said nothing and I told them to get out of the car and they got out and reached over and picked the lid up and it had this underwear in it. And then I looked on the floorboard of the car and there were the two money sacks. And I told them they were under arrest. And I reached and got the two bags and carried the two fellows on to the car. About that time Captain Goss come back out of the alley and I told him it looked like I had them."

On trial of the Motion to Suppress, Lt. Howard had testified:

"Yes, sir, and run around behind this little old black Chrysler made an attempt to pull on off and I hollered for him to stop his car. So he stopped. So I went on up to the car and I asked them where they were from, so they told me they were from Shreveport. * * * but I saw a box about so big and square in between the two subjects on the front seat of the car. I asked him what was in the box and he said nothing and I told him then to get out. So they got out, I raised the lid up on this box, it was full of new underwear. I don't know how many pairs, men's underwear, then I looked on the floorboard of the car and there were two money bags and I reached and got them and told them they were under arrest, go to the police car. About that time Capt. Goss come back out of the alley and we put the handcuffs on them on to City Hall."

Captain Goss returned from the alley, searched the defendants, assisted in handcuffing them, and radioed to Chief of Police O. O. Osbourne to come to the scene. Captain Goss and Patrolman Lester drove the men to City Hall in the patrol car, and Lt. Howard followed in the defendants' Chrysler.

Chief Osbourne testified that when he arrived at the scene, the two subjects were in the patrol car, and that he saw therein a box containing some underwear and two bank bags; that he took possession of the articles and had had them in his possession since that time.

All of the above events are timed as between 2:45 P.M. and 3:00 P.M. on March 31, 1963—approximately one-half hour to forty-five minutes after Mr. Glasgow had reported the burglary.

Defendants' Motion to Suppress Evidence was directed to the introduction in evidence of the above described objects found in their Chrysler car. Among these objects were a money bag, two one dollar bills bearing certain markings made by J. L. Glasgow, and a box of underwear. There was positive uncontradicted testimony identifying the evidence as the property of J. L. Glasgow.

Defendants contend herein that their arrest was unlawful, and that the evidence taken from their automobile was the result of an illegal search and seizure and therefore not admissible in evidence. The State argues that the arrest of the defendants was lawful, and that the search and seizure of the articles of evidence were incidental to the arrest and, hence, also lawful and admissible.

We will first discuss the legality of the arrest.

LSA–R.S. 15:60 provides:

"Any peace officer may, without a warrant, arrest a person:

"(1) For the commission of any felony or misdemeanor committed in his presence;

"(2) When such person has committed a felony although not in the presence of the officer;

"(3) When a felony in fact has been committed and he has reasonable cause to believe that such person has committed it;

"(4) When he has reasonable cause to believe that a felony has been committed and reasonable cause to believe that such person has committed it;

"(5) When he has received positive information by written, telegraphic or other authoritative source that another officer holds a warrant for such arrest."

In contending that defendants' arrest was unlawful, their trial attorney urges that it was without probable or reasonable cause since no warrant of arrest had issued prior thereto.

"From our examination of the authorities an arrest can be made where there is probable cause or surrounding suspicious circumstances. O'Malley v. Whitaker, 118 La. 906, 43 So. 545; Dunson v. Baker, 144 La. 167, 80 So. 238." Barfield v. Marron, 222 La. 210, 62 So.2d 276.

"Reasonable grounds is the precursor to a valid arrest without a warrant * * * and a subsequent successful search does not cure an otherwise defective arrest. The arrest * * * must be validated without any resort to the fruits of the search. * * *

*      *      *      *      *      *

" 'Reasonable ground,' then, is the litmus paper for testing validity of arrests without a warrant. Implicit in such test is the exclusion of arbitrary and capricious interference with individual freedom. Dignity and sanctity of the individual are not to be jeopardized by the whim or zeal of policemen. Consequently organic law, reflected in the relevant statutes and Rules of Criminal Procedure interposes the judiciary between law enforcement officers and citizens by requiring, as normal procedure, application for warrants and the attendant opportunity for the judicial branch to pass on the question of probable cause. This constitutional insulation against infringing basic rights is removed only under classes of exigencies which have been judicially approved on review and now form a discernible pattern of instances, excusing law-enforcement officers for by-passing the requirement of having the judiciary first rule upon the question of probable cause. In those situations the law is adjusted and imposes on the law

enforcement agent a standard of discrimination. Rather than blind worship of cause alone, the law probes for the basis of the officer's action measuring it by an external standard. After all when an arrest without a warrant is classed as valid, it simply means such action is judicially tolerated as being within the constitutional bounds of reasonableness as officially or pragmatically defined in case-law. Fresh combinations of facts must necessarily be examined under the terms labelled 'probable cause' and 'reasonable grounds' for neither one is a static concept. But the criteria embedded in each continues to be one that refuses approval for arrests without a warrant where an officer is stimulated by an inkling only. For he must act as a man of reasonable caution. 'Suspicion' is an elusive word with a wide spectrum of intensities and courts must examine the facts underlying it rather than be deflected by the word itself." United States v. Walker, 7 Cir., 246 F.2d 519. See, Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441; Bowler v. Warden, Maryland Penitentiary, D.C.Md., 219 F.Supp. 25; Mares v. United States, 319 F.2d 71, 10 Cir.; United States v. Nicholas, 319 F.2d 697, 2 Cir.

"The crucial question for us then is whether knowledge of the related facts

and circumstances gave Marsh 'probable cause' within the meaning of the Fourth Amendment, and 'reasonable grounds' within the meaning of § 104 (a), supra, to believe that petitioner had committed or was committing a violation of the narcotic laws. If it did, the arrest, though without a warrant, was lawful and the subsequent search of petitioner's person and the seizure of the found heroin were validly made incident to a lawful arrest, and therefore the motion to suppress was properly overruled and the heroin was competently received in evidence at the trial. * * *" Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327.

"(b) Suspicion

"Probable cause has also been defined as a reasonable cause of suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious man in the belief that the person accused is guilty of the offense with which he is charged.

"Suspicion has been defined by the courts in several ways. It has been explained in judicial decisions that 'suspicion' is the perception of something without proof or upon slight evidence; or that it implies a belief or opinion as to guilt, based on facts or circumstances which do not amount to proof; or it is that state of mind

which, in a reasonable mind, would lead to inquiry. The word 'suspicion' is defined as the existence, in the imagination, of something without proof, or upon very slight evidence, or upon no evidence at all.

"A peace officer may arrest, without a warrant, one whom he has reasonable and probable grounds to suspect of having committed a felony. 'Suspicion' implies a belief or opinion as to guilt, based upon facts or circumstances which do not amount to proof, and the test is whether the facts or circumstances are such as would move a man of ordinary reason and prudence, in the officer's situation, to act in good faith in the discharge of his duty.

\* \* \* \* \* \*

"The general rule of law which is adhered to by the majority of the states is that police may not arrest on mere suspicion, but only upon probable cause, based upon the facts and circumstances known to the officer which would justify a prudent man in believing that the accused had committed an offense." Searches, Seizures and Immunities, Varon, Vol. 1, "Suspicion," pp. 82–4. See State v. Aias, 243 La. 945, 149 So. 2d 400, Certiorari Denied, 84 S.Ct. 446; State v. Calascione, 243 La. 993, 149 So.2d 417.

■ From the facts of record, supra, we find that Glasgow's had been burglarized;

a felony had been in fact committed; the fact of the burglary had been communicated to Captain Goss, and such fact was transmitted by him to Lt. Howard and Patrolman Lester; the defendants were not local boys of Ruston, and the officers had general knowledge and intuition as to who were residents of this relatively small community; the defendants' car was not a local car, and it was being driven at an unusually slow speed; the demeanor of Sylvester Alexander in looking up the alley which was in the back of Glasgow's, when about 100 feet from the rear entrance thereto, was suspicious; when Lt. Howard peered into the defendants' car before ordering the men to alight, he saw a box which he suspected was stolen property and contained stolen property; on trial, the defendants were proven guilty of committing the instant felony.

An application of the above law and jurisprudence to our findings in this matter leads us to conclude that sufficient and specific information was communicated to the arresting officers, and that the facts and circumstances surrounding the accused would have lead a cautious, reasonable, and prudent man to believe that the defendants had burglarized Glasgow's. We find that the arresting officers, especially Lt. Howard, had probable cause and reasonable grounds to arrest James Pickens and Sylvester Alexander. We conclude that such arrest was therefore lawful under Louisiana statutory

law and jurisprudence and our interpretation of the other authorities above cited and quoted.

We now approach counsel's contention that the search of defendants' automobile and the seizure of the articles found therein, under the circumstances, since it was done without a search warrant, was without probable cause and therefore in violation of Article I, Section 7,[2] of the Constitution of Louisiana and the Fifth and Fourteenth Amendments to the Constitution of the United States.

■ Initially, we state that defendants' contention will be determined in the light of the following rule set forth by the Supreme Court of the United States in the case of Ker v. State of California, (1963), 374 U.S. 23, 83 S.Ct. 1623, 1628, 10 L.Ed.2d 726, to which we shall adhere:

"In Mapp v. Ohio, 367 U.S. [643], at 646–647, 657, 81 S.Ct. [1684], at

1686–1687, 1692–1693, 6 L.Ed.2d 1081, we followed Boyd v. United States, 116 U.S. 616, 630, 6 S.Ct. 524, 532, 29 L.Ed. 746 (1886), which held that the Fourth Amendment, implemented by the self-incrimination clause of the Fifth, forbids the Federal Government to convict a man of crime by using testimony or papers obtained from him by unreasonable searches and seizures as defined in the Fourth Amendment. We specifically held in Mapp that this constitutional prohibition is enforceable against the States through the Fourteenth Amendment. This means, as we said in Mapp, that the Fourth Amendment 'is enforceable against them [the states] by the same sanction of exclusion as is used against the Federal Government; by the application of the same constitutional standard prohibiting 'unreasonable searches and seizures.' 367 U.S., at 655, 81 S.Ct., at 1691, 6 L.Ed.2d 1081. * * *"[3]

2. "The right of the people to be secure in their persons, houses, papers and effects against unreasonable searches and seizures, shall not be violated, and no such search or seizure shall be made except upon warrant therefor issued upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized." Art. I, Sec. 7, LSA–Const. of 1921.

3. "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrant shall issue, but upon probable cause,

supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." Amend. 4 to the Const. of the U. S.

"* * * No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." Amend. 14 to the Const. of the U. S., Sec. 1.

■ State police authorities are prohibited from making unreasonable searches, and ordinarily a search warrant issues upon probable cause for the search for stolen property. LSA–R.S. 15:42. However, in the case of moving vehicles whose drivers may be carrying contraband or stolen property, and flight and escape are imminent, probable cause can exist for search without a search warrant, time being of the essence. If the vehicle or automobile were not searched, apprehension of the criminal would be unnecessarily delayed and perhaps never take place.

"In determining the reasonableness of a search without a warrant different factors come into play when the search is of a moving vehicle rather than of a home, especially where the officer has reasonable grounds to believe that the vehicle is then and there being used as a means of committing a crime. Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543; Brinegar v. United States, 338 U.S. 160, 69 S.Ct. 302, 93 L.Ed. 1879; Ray v. United States, 4 Cir., 255 F.2d 473; Patenotte v. United States, 5 Cir., 266 F.2d 647. Cf. Henry v. United States, 361 U.S. 98, 80 S.Ct. 168, 4 L.Ed.2d 134; Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327." United States v. Copes, D.C.Md., 191 F.Supp. 623 (1961) affirmed 8 Cir., 297 F.2d 535, Cert.

Denied, 370 U.S. 946, 82 S.Ct. 1592, 8 L.Ed.2d 812.

"(a) Incidental Search of Automobiles

\*        \*        \*        \*        \*        \*

"Automobiles are animate objects, usually in flight upon the highway and public streets, creating a problem for law enforcement officials seeking to subdue crime. The law has been settled long ago that officers having reasonable cause to believe contraband is being unlawfully transported in a certain vehicle may search it without warrant. The crux of the legality of such an arrest without warrant and search incidental thereto depends upon the degree of probable cause that gave rise to the belief by the officer that the automobile searched was carrying contraband.

"Therefore, it appears that the definition and interpretation of the term 'probable cause,' as applied to the facts and circumstances in a given case, furnishes the line of distinction between a legal or illegal search and seizure of a motor vehicle. We have already discussed the various standards and measures applied to probable cause which is said to exist if the facts and circumstances before the officer are such as to warrant a man of prudence and

caution in believing that the offense has been committed.

"* * *" Searches, Seizures and Immunities, Varon, Vol. 1, p. 108.

We have previously reiterated the facts in the present matter. We now find from such facts that Lt. Howard and Captain Goss had probable cause and reasonable grounds to search defendants' car without a search warrant; a burglary had taken place and the officers were ordered to investigate; Lt. Howard saw, in defendants' car, the box which had been stolen and which contained stolen underwear; during trial, defendants were proved guilty of the instant felony; money was discovered in the car,[4] and it was identified as that of J. L. Glasgow, proprietor of the burglarized premises; the officers apprehended the defendants on probable cause and reasonable grounds, and it was thereafter that their car was searched for stolen property.

We conclude that the search and seizure were valid and lawful; under such findings, the confiscated evidence was admissible during trial. Additionally, we find that the search and seizure were incidental to a legal arrest; under this finding, the confiscated evidence was admissible during trial. State v. Aias, 243 La. 945, 149 So.2d 400.

The Motion to Suppress Evidence was properly denied; the rulings of the trial judge were correct.

Bills of Exceptions Nos. 1, 2, and 3 are without merit.

For the reasons assigned, the convictions and sentences are affirmed.

4. Burglary tools were also discovered in the car.