**UNITED STATES of America**

**v.**

**David APPLE.**

**Crim. No. 27983.**

United States District Court
D. Maryland.

Dec. 20, 1968.

Stephen H. Sachs, U. S. Atty., and Clarence E. Goetz, Asst. U. S. Atty., Baltimore, Md., for plaintiff.

Morris Lee Kaplan, Baltimore, Md., for defendant.

THOMSEN, Chief Judge.

Defendant is charged in a one count indictment with transporting in interstate commerce, from New York to Maryland, for the purpose of sale and distribution, obscene, lewd, lascivious and filthy material, including 1,000 reels of 8 millimeter motion picture film, 400 decks of playing cards and 350 copies of paper bound booklets. 18 U.S.C. § 1465.

Before trial defendant filed a motion, alleging that the material had been illegally seized as the result of an illegal search of his automobile, and prayed that the material be suppressed and not offered against him at the trial of this case. That motion was denied by Judge Northrop, after a hearing at which defendant and two FBI agents testified.

The case came on for trial before me. A jury was waived, and by agreement the case was presented to the Court on a statement of facts, the testimony taken at the hearing on the motion to suppress, which was renewed by defendant, two films ("Village Ball" and "Coffee Break"), seven decks of cards, and six booklets (four titles), all of which were included in the material seized. The film "Village Ball" was shown in the courtroom, and defendant agreed that "Coffee Break" was essentially the same. The Court has examined the cards and booklets.

Defendant raises only two issues: whether the material is obscene under the applicable test, and whether it was illegally seized.

1. All of the material is obscene, hard core pornography, not protected by the First Amendment.

The present state of the law is fully discussed in the three opinions filed in United States v. A Motion Picture Film Entitled "I Am Curious—Yellow", 404 F.2d 196, (2 Cir., November 26, 1968). Two of the appellate judges found some "redeeming social value" in that film. In the present case, however, the film "Village Ball" is utterly without redeeming social value. It begins with two women disrobing in the presence of two men, and proceeds quickly to scenes, including many close-ups, of sexual intercourse, fellatio, cunnilingus, and other sexual activity by the two naked men and two naked women. There is no story, nothing else. The dominant theme of the material taken as a whole appeals to a prurient interest in sex; there is no other theme and no other appeal. The material is patently offensive because it affronts contemporary community standards relating to the description or representation of sexual matters. Each of the three constitutional criteria for the determination of

obscene material not protected by the First Amendment has been considered separately by this Court, and has been found to exist.

The same is true of the cards and booklets. A picture is printed on each card, many of which show scenes of sexual intercourse, fellatio and cunnilingus. The small booklets, of 32 pages each, published by All Sport Fornications Press, contain little but descriptions of activities similar to those depicted in the film. Each contains a few full-page photographs of such activities, and a list of 100 other titles now available. The titles of the booklets offered in evidence and the titles of the other booklets advertised therein confirm the nature of the appeal.

2. After reading the transcript of the testimony taken before Judge Northrop I adhere to his conclusion that the material was not illegally seized. From slightly conflicting evidence I find the following facts:

A paid informer, whose identity was disclosed at the hearing on the motion to suppress, and who had previously supplied the FBI with information which proved reliable, brought to a special agent of the FBI on January 17, 1968, two films, "Coffee Break" and "Village Ball", which he said he had purchased from defendant, his employer, who sold such films at his restaurant. In order to comply fully with the requirements of United States v. Peisner, 311 F.2d 94, 105, 5 A.L.R.3d 1196 (4 Cir. 1962), the agent brought the two films to Assistant United States Attorney Goetz, who called in First Assistant United States Attorney Murphy, who has wide experience in handling cases of alleged obscenity. Goetz and Murphy viewed the film along with another Assistant, and told the agent that in their opinion the films were obscene. The informer told the agent that defendant's stock of films was running low, and that defendant had made telephone calls to Brooklyn and to a man named Gus in Staten Island to arrange for the delivery of additional films to defendant in New York or New Jersey. One of the agents knew that a man in Staten Island dealt in such material.

During the evening of February 16 the informer told the agent that defendant had made arrangements with his New York contact to pick up the film that evening on the New Jersey Turnpike. Accordingly, several agents followed defendant's car when he left Baltimore, somewhere between 8 and 9 p. m. Defendant stopped for food at a restaurant on the New Jersey Turnpike, then had a flat tire at about 10 p. m., waited for a tow truck to replace the tire, and stopped at another restaurant farther up the Turnpike at about 1:15 a. m. He remained there for about 10 minutes and then proceeded to the Goethals Bridge and onto Staten Island. The agents lost contact with him on the Island, but picked him up again sometime after 3 a. m. and followed him down the New Jersey Turnpike, noting that his car seemed to ride lower in the back than it had on the way up. The agents followed defendant through Delaware into Maryland until he approached the toll booth on the Kennedy Expressway in Cecil County, Maryland, at dawn, a little before 6:30 a. m. Arrangements had been made to have only one booth open and, as defendant passed through, one of the agents' cars blocked his passage. An agent approached the car, noticed packages on the back seat similar to the packages in which the films previously examined had been shipped, and noticed that one of the packages containing cards was open. The agent then showed defendant his credentials, said he wanted to examine the car, opened the car door, told defendant to move over and put up his hands, drove the car to the side of the road, and frisked defendant for weapons, but did not tell him he was under arrest. Two other agents examined the packages in the rear seat and in the trunk, examined the cards, and found the films they were looking for. Agent Noel then told defendant that he was under arrest, charged him with violating 18 U.S.C. § 1465, and advised him of his rights. Defendant made no state-

ment, but agreed that he would rather have one of the agents drive his car to Baltimore than leave it by the toll booth.

On these facts, when the agents stopped the car, they had probable cause to believe that a felony had been committed in their presence and to arrest defendant. Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959); United States v. Copes, 191 F.Supp. 623 (D.Md.1961), aff'd sub nom. United States v. Sawyer, 297 F.2d 535 (4 Cir. 1962). If it should be held that defendant was arrested when Agent Noel entered the car, the search was justified as incident to a lawful arrest. If it should be held that the agents detained him first and arrested him later, after looking at the film and cards, the search was justified because the agents had probable cause to stop and search the moving automobile. Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925), and cases cited in United States v. Copes, 191 F. Supp. 623, 625 (D.Md.1961). Cf. Cooper v. California, 386 U.S. 58, 87 S.Ct. 788, 17 L.Ed.2d 730 (1967). Preston v. United States, 376 U.S. 364, 84 S.Ct. 881, 11 L.Ed.2d 777 (1964), is inapplicable, as the search in the present case was not remote from the arrest either in time or place. Since the agents had not been told until the evening of February 16 that defendant was about to go north to pick up the films, and since defendant left his diner almost immediately thereafter, there was no reasonable opportunity to obtain a search warrant. The search and seizure were not unreasonable.

Nor was the search rendered illegal by the fact that First Amendment questions are involved. This is a different case from A Quantity of Copies of Books v. Kansas, 378 U.S. 205, 84 S.Ct. 1723, 12 L.Ed.2d 809 (1964). In that case the State had seized and impounded pending hearing 1,715 copies of 31 novels under a warrant issued by a magistrate on an information filed by the Attorney General of Kansas, who had "scrutinized" seven of the books for a total of 45 minutes. The information stated that "upon information and belief * * * there is [an] * * * obscene book * * * located within this county." The Supreme Court held that "the procedures followed in issuing the warrant for the seizure of the books, and authorizing their impounding pending hearing, were constitutionally insufficient because they did not adequately safeguard against the suppression of nonobscene books". 378 U.S. at 208, 84 S.Ct. at 1724. The books in the Kansas case were in a store or warehouse; they were not being transported in an automobile, which has great freedom of movement.

In the case before this Court the experienced First Assistant and two other Assistant United States Attorneys had viewed the *entire* films "Village Ball" and "Coffee Break", and found them obscene before the agents made plans to arrest defendant if he transported additional copies of those films in interstate commerce. Additional copies of those films were found in the automobile at the time defendant was arrested, after he had transported them across state lines in violation of the federal statute. The requirements of United States v. Peisner, 311 F.2d 94, 5 A.L.R.3d 1196 (4 Cir. 1962), had been fully complied with. The case of Metzger v. Pearcy, 393 F.2d 202 (7 Cir. 1968), suggests a procedure which adequately protects the interests of the public, as well as the First Amendment rights of a defendant. In that case four copies of a film intended for public showing had been seized by the State without a warrant; four persons had been arrested in connection with the showing of the films, and criminal prosecutions had been instituted. The owner of the film sought and obtained from a federal district court an order directing that the prosecuting attorney and the sheriff return the films to him. But the district court also ordered that the owner deliver to the prosecuting attorney, upon request of the latter, one print of the film for use in the trials or in the preparation for the trials of the criminal cases. This

action was approved by the Seventh Circuit, 393 F.2d at 204.

In the present case defendant made no effort to secure the return of any of the material. He merely filed a motion that the material seized "should be suppressed and not offered against him at the trial of this case."

This Court concludes that the First Amendment does not require the suppression of nor prevent the use of the two films, the seven decks of cards and the six booklets offered in evidence.

The Court finds the defendant guilty beyond a reasonable doubt of the offense charged.